**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bozo KELAVA and Mile Kodzoman,
Defendants-Appellants.**

**No. 79–1520.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1979.

Decided Dec. 11, 1979.

Robert A. Merrick, Jr., Michael D. Monico, Chicago, Ill., for Bozo Kelava.

Frank E. Stachyra, argued, William J. Martin, Robert M. Stephenson, Chicago, Ill., for Mile Kodzoman.

Thomas P. Sullivan, U.S. Atty., Cynthia Giacchetti, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, CASTLE, Senior Circuit Judge, and SWYGERT, Circuit Judge.

SWYGERT, Circuit Judge.

In this appeal from the denial of the defendants' pre-trial motion under the Dou-

ble Jeopardy Clause,[1] we must determine the effect of the defendants' previous trial for conspiracy and kidnapping of foreign officials on the Government's present efforts to prosecute them for armed imprisonment of a foreign official. We hold that the defendants may be retried, but the retrial must be limited to the charge of simple imprisonment properly included in the kidnapping charge under Count Two of the first indictment.

## I.

On August 17, 1978, the defendants entered the West German Consulate in Chicago. Each of the defendants carried a hand gun; they also brought ropes and a phony bomb. The defendants entered the Vice Consul's office, rounded up several other people in the building, and held them in that office. The purpose of the defendants' actions was to persuade the West German Government to deny extradition of Stepan Bilandzic, a fellow Croatian nationalist, to Yugoslavia. After ten and a half hours of negotiations, the defendants were allowed to speak with Bilandzic by telephone. Upon receiving assurances that Bilandzic would not be extradited without further review of his case, the defendants released their remaining hostages and surrendered.

A magistrate's complaint was filed on August 18 charging the defendants with imprisonment of six named officials of the Consulate while using deadly and dangerous weapons (hereinafter "armed imprisonment") in violation of 18 U.S.C. § 112.[2] One week later, the government obtained indictment 78–Cr–551, superceding the

magistrate's complaint and charging the defendants with four counts of kidnapping a named foreign official in violation of 18 U.S.C. § 1201(a)(4).[3] On October 31, the government filed a second superceding indictment, retaining the designation 78–Cr–551. This final version of 78–Cr–551 (hereinafter "first indictment") added a new Count One charging the defendants with conspiracy to kidnap foreign officials and renumbered the four substantive kidnapping counts as Counts Two through Five.

The defendants' jury trial on the first indictment began on November 22, 1978 before Judge McMillen. Most of the conduct alleged against the defendants and described briefly above was not disputed. The defendants submitted additional evidence to show the seriousness of the threat to Stepan Bilandzic's life, if extradited, and to show the degree of concern for Bilandzic in the Croatian community, both in Chicago and around the world. The defense theory was that the threat to Bilandzic amounted to duress which forced the defendants to commit the acts charged, or at least that their concern for Bilandzic negated the mental culpability required to establish the crimes charged.

After the close of evidence on November 29, Judge McMillen excused the jury for the day and held a conference with counsel for both sides regarding the court's instructions to the jury. The defendants submitted proposed instructions on the offense of imprisonment of a foreign official (hereinafter "simple imprisonment")[4] as a lesser included offense under the kidnapping counts.

---

1. A denial of a pre-trial motion to dismiss on double jeopardy grounds is appealable as a final collateral order under 28 U.S.C. § 1291. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

2. Section 112 provides in pertinent part:
   (a) Whoever assaults, strikes, wounds, imprisons, or offers violence to a foreign official, . . . shall be fined not more than $5,000 or imprisoned not more than three years, or both. Whoever in the commission of any such act uses a deadly or dangerous weapon shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

3. Section 1201(a)(4) provides:
   (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when:

   . . . . .

   (4) the person is a foreign official

   shall be punished by imprisonment for any term of years or for life.

4. 18 U.S.C. § 112(a). *See* note 2, *supra.*

The prosecutor objected to these instructions, arguing that the evidence showed that defendants used "deadly or dangerous weapons" in taking over the Consulate, and therefore that the instructions should include the language "with the use of a deadly or dangerous weapon," tracking the increased penalty provision of § 112(a). Defense counsel initially agreed that armed imprisonment was also a lesser included offense of kidnapping, but argued that the evidence still would permit the jury to find the defendants guilty of simple imprisonment as described in the proposed instruction. At the end of his argument on the evidence produced at trial, however, the following exchange occurred:

[Defense Counsel]: . . . and, furthermore, your Honor, the Government in the kidnapping charge does not use the expression "with deadly or dangerous weapons." They could have done that, I would suspect, from the—in the kidnapping, but they did not.

The Court: No.

[The Prosecutor]: That is not an element of Section 1201, that a deadly or dangerous weapon be used.

5. Defense counsel made several attempts to clarify his position that only simple imprisonment should be submitted to the jury, including the following:

[I]t is the defense's position that the offense of imprisonment is a lesser included offense by virtue of the fact that imprisonment is the equivalent of the confinement mentioned in the greater statute.

Tr. 974.

The only reason that I offered [the simple imprisonment version of § 112(a)] was because it is the defense's position that, as a legal matter, [§ 112(a)] is a lesser included offense only by virtue of the imprisonment . . . not by virtue of the assault. In other words, the kidnapping statute with which the defendants are charged does not contain an element of assault and the reason that 112(a) is a lesser offense of kidnapping is because the imprisonment in the lesser statute coincides with and is included with the term "confined" in the kidnapping statute. But that is not true with respect to the word "assault."

Tr. 988. Defense counsel then adopted this last explanation as his reason for once more opposing the inclusion of the words "deadly and dangerous weapons" in the instructions. Tr. 989.

Tr. 887. During the further discussions that afternoon and the following morning, defense counsel continued to press solely for a simple imprisonment instruction.[5] The court finally agreed to submit only simple imprisonment, but insisted that the instruction specify that the defendants acted "without the use of a deadly or dangerous weapon." Defense counsel opposed the inclusion of that language and offered to accept instructions on both simple and armed imprisonment in order to preserve his version of the simple imprisonment instruction.[6]

The district court instructed the jury that it had four possible verdicts to consider under each of the four kidnapping counts: guilty of kidnapping, guilty of armed imprisonment, guilty of simple imprisonment, or not guilty. The jury began its deliberations on the afternoon of November 30 and returned its verdict the following afternoon, finding both defendants not guilty under Counts One, Three, Four and Five. Under Count Two, the jury found the defendants guilty of armed imprisonment.

6. The course of this discussion is shown by the following:

The Court: . . . I would be perfectly willing to give only one, but then if I do, I am going to put in the caveat that it has to be without the use of a deadly weapon. I think the Government is entitled to it and, as I understand your position, you would want both of the lesser included offenses given rather than the minor one without a deadly weapon . . . .

[Defense Counsel]: Your Honor, as our initial position we only want the minor, lesser included offense. But we do not wish to accept the Court's suggestion that the Court put in the caveat that it has to be without a deadly weapon.

The Court: All right.

[Defense Counsel]: And it is only on that ruling that we wish both alternatives of the lesser included.

The Court: All right . . . .

Tr. 989–990. Despite this apparent understanding, the court's instruction to the jury on simple imprisonment included the language "without a deadly or dangerous weapon." Tr. 1104.

Judge McMillen immediately directed entry of convictions on the verdicts.

In their post-trial motions, the defendants argued that the convictions of armed imprisonment entered on the jury's verdict could not stand because armed imprisonment is not a lesser included offense of kidnapping as charged in Count Two of the first indictment. The primary relief requested was a judgment of acquittal of the offense of armed imprisonment and entry of a judgment of conviction of simple imprisonment as a proper lesser included offense under Count Two. On January 8, 1979, Judge McMillen vacated the convictions, holding that armed imprisonment is not a lesser included offense of kidnapping as charged in Count Two, because armed imprisonment requires proof of the element of use of a deadly or dangerous weapon which is not an element of the crime of kidnapping and which was not charged in Count Two. He refused to enter convictions for simple imprisonment, however, and ordered a new trial.

On January 12, the government filed indictment 79–Cr–33 (hereinafter "second indictment"). Count One of the second indictment charged the defendants with armed imprisonment of the same foreign official named in Count Two of the first indictment. Counts Two, Three and Four charged the defendants with assaulting individual federal officers during the takeover at the Consulate in violation of 18 U.S.C. § 111.

The defendants filed a motion for clarification and reconsideration of Judge McMillen's January 8 oral ruling ordering a new trial. On February 23, the court entered an order explaining its decision to set aside the convictions of armed imprisonment and its refusal to enter convictions for simple imprisonment. On the latter point, the court reasoned that the jury had never reached the lesser included offense of simple imprisonment, so the court had no power to enter a judgment of conviction on that offense. The court also vacated its previous order for a new trial on the ground that the indictment under which the new trial was ordered had now been superceded.

The defendants next turned their attention to the second indictment. On the defendants' motion, Judge McMillen recused himself to avoid any appearance of bias. The case was reassigned to Judge McGarr. The defendants then filed a motion to dismiss the second indictment on the grounds of prosecutorial vindictiveness and double jeopardy. Judge McGarr granted the motion as to Counts Two through Four, the assaulting a federal officer counts, on the ground that since the Government was aware of the facts underlying these counts when the first indictment was obtained, the inclusion of such counts in the second indictment after the results of the first trial gave the appearance of prosecutorial vindictiveness. The Government has not appealed from this ruling.

Judge McGarr, however, rejected the defendants' double jeopardy argument regarding the armed imprisonment charge in Count One of the second indictment, saying:

First, when a defendant successfully attacks his conviction, he may be retried without a violation of the Fifth Amendment protection against double jeopardy. *United States v. Green [Green v. United States]* 355 U.S. 184 [78 S.Ct. 221, 2 L.Ed.2d 199] (1957); *United States v. Tateo,* 377 U.S. 463 [84 S.Ct. 1587, 12 L.Ed.2d 448] (1964). Moreover, although the jury found defendants guilty of the offense contained in Count I of the new indictment, the verdict was a nullity because that crime was not properly before the jury as a lesser-included offense. Thus, defendants have not been tried for armed imprisonment; the verdict of guilty by implication on the lesser-included offense of simple imprisonment was a nullity; and jeopardy has not attached as to either.

The defendants appeal from this ruling.

To summarize these facts briefly, under Count Two of the first indictment the defendants were tried for kidnapping. The kidnapping charge necessarily included the offense of simple imprisonment. The dis-

trict court erroneously submitted to the jury an additional charge of armed imprisonment, an offense not properly included in the kidnapping charge. They jury found the defendants guilty of armed imprisonment. On the defendants' post-trial motions, the district court set aside the convictions. The Government then obtained the second indictment, charging the defendants with armed imprisonment on the same facts underlying Count Two of the first indictment.

These facts raise two issues: Whether the defendants may be retried at all and, if so, on what charge.

## II.

The first question is answered by the rule established in *United States v. Ball*, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896), that "a defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted." This rule has been applied consistently to cases in which a defendant

has obtained a reversal of a conviction on an appeal (except where the reversal is for insufficient evidence) and it has been described recently by the Supreme Court as one of two "venerable principles of double jeopardy jurisprudence." *United States v. Scott*, 437 U.S. 82, 90–91, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978).[7]

In the present case, the defendants were tried on the first indictment, they were found guilty by the jury of the armed imprisonment charge submitted to it by the trial judge under that indictment, and the court ordered convictions entered on the jury's verdict. On their post-trial motions the defendants succeeded in overturning these convictions on the ground that armed imprisonment is not a lesser included offense of kidnapping as charged in the first indictment—a ground not related to the defendants' guilt or innocence of the charges validly included in that indictment. Both the terms and the rationale of the *Ball* rule apply to these facts with full force. *Cf. Houp v. Nebraska*, 427 F.2d 254 (8th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 887, 27 L.Ed.2d 827 (1971).[8]

7. In *Sumpter v. DeGroote*, 552 F.2d 1206, 1210–1211 (7th Cir. 1977), we explained the *Ball* rule as follows:

Although several theoretical justifications have been proposed to support the *Ball* rule, the Supreme Court's current explanation for the rule is "the practical justification" that it "is simply . . . fairer to both the defendant and the Government." *United States v. Wilson*, 420 U.S. 332, 343 n.11, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975). The Court's "fairness" rationale draws upon Justice Harlan's opinion in *United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), for analytical support:

"While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the *Ball* principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint

of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest." *Id.* at 466, 84 S.Ct. at 1589.

As *Wilson* and *Tateo* intimate, the *Ball* rule rests on an "analysis of the respective interests involved." *Breed v. Jones*, 421 U.S. 519, 534, 95 S.Ct. 1779, 1788, 44 L.Ed.2d 346 (1975). Simply put, the rule embodies the Court's judgment that the societal cost of immunizing the guilty from retrial outweighs the heavy burdens that reprosecution imposes on the accused.

8. The facts in *Houp* are quite similar to those before us. Houp was charged with stealing a semi-trailer. After all the evidence was in and the jury had retired to deliberate, the trial judge realized that he had neglected to instruct the jury in accordance with Nebraska law that in order to find Houp guilty it must determine the value of the stolen goods. The judge informed both counsel of the error and both sides opposed calling the jury back to add the instruction. The jury later found Houp guilty without

The fact that the defendants were able to upset their convictions in the trial court, rather than on appeal, cannot make a difference in the result. In *Houp v. Nebraska, supra,* 427 F.2d at 257, the court said,

> By granting Houp a new trial . . . the Nebraska trial court corrected its error and afforded the defendant a second opportunity to defend against the state's charge. It might have entered a judgment and forced Houp to appeal in order to rectify the [error] and obtain a retrial. Double jeopardy clearly would then not apply. (Citing *Ball.*)

We decline to hold that where the trial court granted the defendants' motion to overturn their convictions the defendants may not be retried, in the face of the clear rule that if the trial court had denied the motions and the convictions had then been reversed on appeal on the same grounds, retrial would be allowed. Such a ruling would treat identically situated defendants differently based solely on which court overturned their conviction. *Cf. United States v. Tateo,* 377 U.S. 463, 467–468, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) (declining to treat defendants who upset their convictions on collateral attack differently from those who obtain reversals on direct appeal); *Sumpter v. DeGroote,* 552 F.2d 1206, 1211–1212 (7th Cir. 1977) (declining to allow retrial of defendant who obtained reversal on appeal for insufficient evidence when same ruling by trial court would have barred retrial), *cited with approval in Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

In maintaining that they may not be retried at all, the defendants characterize the result of the first trial as including a valid verdict of guilty of simple imprisonment and argue that they were improperly deprived of that resolution of the charges

against them. They contend that the *Ball* rule does not apply because they did not attack the verdict on simple imprisonment. That verdict, they argue, was overturned, not at their request, but over their objection and in spite of their request that a judgment of conviction of simple imprisonment be entered.

This portion of the defendants' double jeopardy claim raises issues analogous to cases in which the trial judge declares a mistrial over the defendants' objection. In the mistrial cases, retrial is barred unless "the declaration of a mistrial was dictated by 'manifest necessity' or the 'ends of public justice.'" *Illinois v. Somerville,* 410 U.S. 458, 463, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973). These standards are taken from the opinion of Mr. Justice Story in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). As the Court explained in *Illinois v. Somerville, supra,* 410 U.S. at 462, 93 S.Ct. at 1069,

> This formulation . . . abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial. The broad discretion reserved to the trial judge in such circumstances has been consistently reiterated in decisions of this Court.

In *Somerville* the Court held that a mistrial declaration was within the discretion of the trial court where the indictment on which the defendant was being tried was defective and any conviction obtained by completing the trial would have been reversible and therefore futile. And in *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), the Court allowed a retrial where the trial judge declared the mistrial to protect the defendant from pos-

---

the required valuation, the court accepted the verdict, and the jury was dismissed. Two days later Houp moved for release from custody on the ground that the verdict was invalid. The trial judge denied the motion, but a few days later the court, *sua sponte*, set aside the verdict and ordered a new trial. Because the trial court's order was *sua sponte*, the Eighth Circuit analyzed the case in terms of a *sua sponte*

mistrial declaration and concluded that the trial judge was justified in setting aside the verdict and that retrial did not violate Houp's double jeopardy rights. Since the trial court in *Houp* acted only after Houp's motion, we think the result in that case is persuasive authority for allowing retrial here where the circumstances are so similar.

sibly prejudicial questions asked by the prosecutor. Although the appellate courts in *Gori* indicated that the trial judge may have acted too quickly and that the prosecutor's conduct did not appear to have been prejudicial, the Supreme Court emphasized the trial court's discretion, saying,

> Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment.

367 U.S. at 368, 81 S.Ct. at 1526.

In the circumstances of the present case, the district court did not abuse its discretion in refusing to enter a conviction for simple imprisonment after vacating the conviction for armed imprisonment. In the first place, the district court's power to enter a conviction on a lesser included offense where the jury has not expressly considered the lesser offense is questionable at best. The defendants cite no authority for such a power in the trial court. The cases the defendants do cite involve the power of an appellate court to modify a lower court judgment "as may be just under the circumstances." 28 U.S.C. § 2106. But the power of the appellate court is based on the statute. No such statute or rule exists granting the district court the power advocated.[9] From Judge McMillen's point of view, entering the judgment requested by the defendants might well have appeared a futile act, subject to reversal on appeal for lack of authority.[10] Cf. *Illinois v. Somerville, supra.* We need not decide whether the district court in fact possessed the power to enter a conviction for simple imprisonment. It is enough that

such a power was doubtful and that the district court reasonably could have deemed a new trial necessary upon vacating the verdict on armed imprisonment.

Furthermore, the district court's refusal to enter a conviction of simple imprisonment may be viewed as protecting the defendants' right to a full and fair consideration of that charge by a properly instructed jury. While we might agree that the verdict of guilty of armed imprisonment logically included fact findings of guilt of simple imprisonment, the fact remains that the jury probably did not actually consider the charge of simple imprisonment under Count Two. And, more importantly, the guilty verdict was returned under erroneous instructions which emphasized the use or nonuse of weapons. The possibility of prejudice to the defendants from the form of the instructions is demonstrated by defense counsel's repeated arguments during the instruction conference that the court should not include the language "without the use of deadly or dangerous weapons" in its simple imprisonment instruction. Counsel's apparent concern was that, given the defendants' admitted use of weapons, such language would have made it more difficult for the jury to return a verdict on simple imprisonment. The trial court ultimately gave both the armed imprisonment instruction and a simple imprisonment instruction which included the language "without a deadly or dangerous weapon." Tr. 1104. In these circumstances, the trial court was not required to speculate whether the jury's determination of guilt was affected by the improper instructions. Cf. *Price v. Georgia,* 398 U.S. 323, 331, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *Crawford v. United States,* 109 U.S.App.D.C. 219, 285 F.2d 661 (D.C.Cir.

---

9. The Government has cited a district court case holding that "[w]here the jury finds a defendant guilty of one offense it is not within the power of the court after setting aside the verdict to find the defendant guilty of a lesser offense." *United States v. Martini,* 42 F.Supp. 502, 510 (S.D.Ala.1941). *But see Austin v. United States,* 127 U.S.App.D.C. 180, 192, 382 F.2d 129, 141 n.26 (D.C.Cir.1967).

10. In denying the defendant's request that he enter a conviction for armed imprisonment, Judge McMillen said:

> Since the jury did not reach the offense of [simple imprisonment], under the instruction, the court has no power to enter a judgment of guilty on that offense. A verdict of guilty of an offense not charged cannot be applied to convict on the lesser included one.

1960).[11]  The court was entitled to exercise its discretion with solicitude for the defendants' rights to a fair jury verdict.  *Gori v. United States, supra,* 367 U.S. at 367, 81 S.Ct. 1523.

In short, the defendants' asserted right to preserve the result of their trial on the first indictment must, in the circumstances of this case, "be subordinated to the public's interest in fair trials designed to end in just judgments."  *Illinois v. Somerville, supra,* 410 U.S. at 470, 93 S.Ct. at 1073 (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)); *see also Arizona v. Washington,* 434 U.S. 497, 516, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

### III.

Having concluded that the Double Jeopardy Clause does not bar a retrial, the peculiar facts of this case raise the additional question: On which charge?  We conclude that various established principles of double jeopardy law combine to preclude trying the defendants for armed imprisonment.

Our analysis begins by recalling what the defendants were tried for on the first indictment.  Count Two charged kidnapping. The trial on that charge necessarily included placing the defendants in jeopardy of conviction of the proper lesser included offense of simple imprisonment.  *See Harris*

*v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).[12]

From this starting point it is clear that the jury's verdict of guilty of armed imprisonment operates as an acquittal on the greater charge of kidnapping and retrial for kidnapping is barred despite the defendants' successful challenge of the armed imprisonment conviction.  *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *Green v. United States,* 355 U.S. 184, 190–191, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).  In *Green,* the Court explained that "[c]onditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy."  355 U.S. at 193–194, 78 S.Ct. at 227.

It is also clear that if the armed imprisonment instruction had not been given, then, whether the jury found the defendants guilty or not guilty of simple imprisonment, the trial for simple imprisonment under the kidnapping counts would have barred any further prosecution for armed imprisonment.  This is so because simple imprisonment, in addition to being a proper lesser included offense of the kidnapping charge in Count Two of the first indictment, is a lesser included offense of armed imprison-

---

**11.** In *Price,* the State argued that a retrial for first-degree murder after a reversal of a conviction for the lesser included offense of voluntary manslaughter was harmless error because the second trial again resulted in a conviction of voluntary manslaughter and no greater punishment was imposed.  The Court refused to find the error harmless, in part because it could not "determine whether or not the [erroneous] murder charge against the petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence."  398 U.S. at 331, 90 S.Ct. at 1762.  Similarly, we cannot determine whether the defendants were prejudiced before the jury by the erroneous instructions given and we do not believe that the Double Jeopardy Clause required the trial court to guess at the risk of immunizing the defendants from retrial.

In *Crawford v. United States, supra,* the defendant was tried on three counts, one a felony and two misdemeanors.  The jury returned a verdict of "Guilty as charged" and was dis-

charged.  Later some of the jurors contended they had never voted on the felony charge. The trial court set aside the entire verdict and ordered a retrial.  On appeal, the court of appeals held that the trial court was justified in setting aside all of the convictions due to the possibility of jury confusion on all of the counts and that double jeopardy did not bar retrial on the misdemeanor counts.

**12.** Count Two of the first indictment charged the defendants with kidnapping a named foreign official.  The elements of that offense are: (1) confining a person, (2) who is a foreign official, (3) for a ransom.  That charge properly included the lesser offense of simple imprisonment of the foreign official, the elements of which are: (1) confining a person, (2) who is a foreign official.  *See Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Makres,* 598 F.2d 1072, 1078–1079 (7th Cir. 1979).

ment under the *Blockburger* test.[13] And under *Brown v. Ohio*, 432 U.S. 161, 164–169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), "[w]hatever the sequence may be, the Fifth Amendment forbids successive prosecution . . . for a greater and lesser included offense." *Id.* at 169, 97 S.Ct. at 2227 (footnote omitted).

Applying these rules to this case we find that the Government's present attempt to prosecute the defendants for armed imprisonment must fail. The defendants were charged with and put to trial for simple imprisonment under Count Two of the first indictment. Under *Brown v. Ohio, supra,* those proceedings raised a double jeopardy bar to further prosecution for armed imprisonment.[14] The district court's instructions erroneously introduced a charge of armed imprisonment into the case. But once the jury acquitted on the kidnapping charge, the trial properly involved only simple imprisonment. In attacking the result of that trial the defendants were not required to surrender the otherwise valid double jeopardy bar against a subsequent armed imprisonment prosecution. *Green v. United States, supra.*

The differences between the parties' analyses of the double jeopardy issue in this case stem from their different treatments of the district court's error in submitting armed imprisonment to the jury. The defendants, after relying on the error to overturn their armed imprisonment convictions, attempt to ignore it and assert that valid verdicts of guilty of simple imprisonment were returned and unnecessarily vacated. We have already rejected that view. The government, to the contrary, treats the erroneous armed imprisonment conviction as the foundation for its present attempt to prosecute that charge. This in effect is an assertion that the district court's erroneous instruction can somehow be used as a bootstrap by which to raise the charge of simple imprisonment included in the kidnapping charge to an armed imprisonment charge which the Government might have made in the first indictment, but did not. We reject this view also. As we see the case, the fact that the district court's erroneous instruction placed the offense of armed imprisonment before the jury was a fortuitous circumstance which cannot alter the double jeopardy consequences otherwise flowing from the trial of Count Two of the first indictment.

That the introduction of the armed imprisonment charge was fortuitous and should not affect the result may be illustrated by the following hypothetical. Suppose the same facts as in the present case; suppose further that instead of armed imprisonment the trial court had erroneously submitted to the jury the similarly related crime of extortion against a foreign official in connection with simple imprisonment of the official, 18 U.S.C. § 878(b).[15] In this

---

**13.** Armed imprisonment contains all of the elements of simple imprisonment, plus the requirement that the defendants use a weapon in committing the crime. *See* cases cited in note 12, *supra.*

**14.** The Government argues that *Brown v. Ohio, supra,* is inapplicable to this case "because no judgment for simple imprisonment exists." Gov't Br. at 17. We reject the suggestion that *Brown's* rule that greater and lesser included offenses are the "same" for double jeopardy purposes depends on an existing conviction or acquittal. The rule in *Brown* is stated in terms of barring "successive prosecution," 432 U.S. at 169, 97 S.Ct. 2221, and it has long been settled "that a defendant, put to trial before a jury, may be subjected to the kind of 'jeopardy' that bars a second trial for the same offense" even when the first trial "ends inconclusively."

*Crist v. Bretz,* 437 U.S. 28, 34–35, 98 S.Ct. 2156, 2160, 57 L.Ed.2d 24 (1978).

**15.** Section 878(b) provides:

Whoever in connection with any . . . violation of section 112 . . . makes any extortionate demand shall be fined not more than $20,000 or imprisoned not more than twenty years, or both.

Section 112 proscribes imprisonment of a foreign official, *see* note 2, *supra.* Thus the extortion crime defined in § 878(b) contains all the elements of simple imprisonment and simple imprisonment contains no elements beyond those required to show extortion. Simple imprisonment is therefore a lesser included offense of § 878(b) extortion. For purposes of this hypothetical, we may also assume that § 878(b) extortion is not a proper lesser included offense of kidnapping a foreign official as

hypothetical then, armed imprisonment is never mentioned, but the equally improper lesser offense of extortion against a foreign official is submitted to the jury. If the jury had found the defendants guilty of the extortion offense, that conviction could have been attacked and set aside as not properly a lesser included offense under the kidnapping counts. *See* note 15, *supra*. Under our holding in Part II, *supra*, the *Ball* rule would allow a retrial of the defendants for the valid simple imprisonment charge included in the kidnapping counts. But we have no doubt that under the hypothetical, the first trial properly embracing a simple imprisonment charge would, under *Brown*, bar a subsequent prosecution for *armed imprisonment*, regardless of the erroneous instruction and conviction on *extortion*. And, under *Green*, the defendants in the hypothetical would not surrender their double jeopardy protection against a subsequent armed imprisonment charge by challenging the erroneous conviction for extortion. If the defendants in the hypothetical could not be retried on an armed imprisonment charge, we see no reason why that double jeopardy bar should disappear when, as in the present case, the erroneous instruction happens to be on armed imprisonment itself.

The Government's position that the defendants may be retried for armed imprisonment under the *Ball* rule depends on its assumption that it is the offense on which the defendants were convicted—here armed imprisonment—which determines the offense on which they may be retried after overturning the conviction. This assumption finds some support in the language used by the Court in *Ball*: "a defendant, who procures a judgment against him upon

an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, *for the same offense of which he had been convicted*." 163 U.S. at 672, 16 S.Ct. at 1195 (emphasis added).

This language must be read in light of the facts in *Ball*, however. There three defendants had been tried for murder on an indictment which "set forth a charge of murder, although lacking the requisite fullness and precision." *Id.* at 670, 16 S.Ct. at 1195. One defendant was acquitted by the jury and two were found guilty. The convicted defendants appealed and obtained a reversal of their convictions on the ground that the original indictment failed to allege the time or place of death of the victim. The prosecutor obtained a new indictment, this time sufficiently charging all three defendants with the same murder.

The Court reversed on double jeopardy grounds the subsequent conviction of the defendant who had been acquitted in the first trial. But the Court affirmed the second convictions of the other two defendants, laying down the rule quoted above. Viewed in its factual context, the purpose of the Court's language in *Ball* becomes clear. The first indictment clearly attempted to charge murder. The defendants were convicted of murder by the jury, but obtained a reversal, thus overturning the results of the Government's attempt to prosecute them on that charge. The first indictment was defective and could not be used to retry the defendants. Therefore, in order to allow a retrial for murder, it was necessary to allow a new indictment charging that offense. The same problem of a defective indictment was involved in *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), and *Illinois v. Somerville*,

---

charged in Count Two of the first indictment. In 18 U.S.C. § 1951(b)(2), extortion is defined as: "the obtaining of *property* from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . . ." (emphasis added). The kidnapping charge in the first indictment did not allege that the defendants obtained or demanded any property as ransom for the foreign officials they held. The evidence showed only that the defendants demanded assurances that Stepan

Bilandzic would not be extradited. Thus the hypothetical extortion charge would, arguably, require proof of an element (obtaining property) not required to prove kidnapping as charged in the first indictment. Section 878(b) extortion, then, would not be a proper lesser included offense of the kidnapping charge for the same reason as the erroneous armed imprisonment charge in this case—and with the same close relationship to the valid lesser included offense of simple imprisonment.

410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). In both cases the Court allowed a retrial on new indictments correctly charging the same offense attempted to be charged in the original charging instruments.

But this is not a defective indictment case. Here the Government tried the defendants on a valid indictment. Count Two of that first indictment charged kidnapping and properly included a charge of simple imprisonment. In our view, these are the charges which determine the double jeopardy consequences of the defendants' trial. This case simply is not the same as if the first indictment had contained separate counts clearly attempting to charge the defendants with armed imprisonment, but omitting an allegation that the defendants used weapons.

> Legal consequences ordinarily flow from what has actually happened, not from what a party might have done from the vantage of hindsight. (Citation and footnote omitted). The precise manner in which an indictment is drawn cannot be ignored, because an important function of the indictment is to ensure that, "in case any other proceedings are taken against [the defendant] for a similar offense, . . . the record [will] show with ac-

curacy to what extent he may plead a former acquittal or conviction." (Citations and footnote omitted).

*Sanabria v. United States,* 437 U.S. 54, 65–66, 98 S.Ct. 2170, 2179, 57 L.Ed.2d 43 (1978).[16]

Under the first indictment, as drawn by the Government, the defendants were tried for kidnapping and simple imprisonment. They attacked and overturned the erroneous result of that trial. As we have explained, under *Brown v. Ohio, supra,* the trial for simple imprisonment would ordinarily bar subsequent prosecution for the greater offense of armed imprisonment; under *Green v. United States, supra,* the defendants did not surrender that otherwise valid bar by attacking the erroneous result of the trial on simple imprisonment; and the mere happenstance that the error that required vacating the result of that trial was an improper instruction on armed imprisonment adds nothing to the Government's position. Nothing in the language of *Ball* suggests that it was intended to extend beyond its own factual context of an insufficient original indictment. Such an extension would, in this case, be inconsistent with *Brown* and *Green* and we decline to read *Ball* in that way.[17]

---

**16.** As our statement of the facts shows, the Government initially did charge the defendants with armed imprisonment, but later elected to supercede that complaint with the kidnapping indictment. The Government's weak assertions in its brief, pp. 21–22, that it thought the kidnapping charges included armed imprisonment are contradicted by the prosecutor's statement at the instruction conference that the kidnapping counts did not include an allegation of the use of weapons because the use of weapons was not an element of kidnapping, *see* p. 481, *supra,* and by its proposed Government Instruction No. 42, which read in pertinent part:

> The indictment charges the defendants with the crimes of conspiracy and kidnapping. . . . The defendants are on trial only for the crimes charged in the indictment.
> . . .

This instruction was denied, of course, and the two lesser included offense instructions were given. The Government submitted no proposed lesser included offense instructions.

**17.** The Government cites *United States v. Ewell,* 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), as support for its reading of *Ball.* In *Ewell* the defendants were tried and convicted for selling narcotics without the order form required by former 26 U.S.C. § 4705(a) (now 21 U.S.C. § 828(a)). The convictions were later vacated in a collateral proceeding for failure to allege a required fact in the original indictment. The Government promptly obtained a new indictment alleging the same sale of narcotics both as a violation of the order form provision, § 4705(a), and as a violation of former 26 U.S.C. § 4704(a) (now 21 U.S.C. § 825(a)), which prohibited sales except in the original stamped package. The Court dealt cursorily with the defendants' double jeopardy claim, holding that the Government was not barred from trying them on the stamped package charge by the earlier trial on the order form charge.

*Ewell* is not controlling here for several reasons. First, *Ewell* was a defective indictment case. Whatever may be said about the Government's freedom to reindict on related charges

**490**

### IV.

In reaching our conclusions in this case we have found it inappropriate to adopt the characterizations of the defendants' trial advocated by either side. The defendants describe the result of the trial as a valid verdict of guilty of simple imprisonment and Judge McMillen's decision as unnecessarily depriving them of that result. The government chooses to view the trial as resulting in a conviction of armed imprisonment based on a defective indictment which, when overturned by the defendants, allowed a retrial for the same offense. As we have explained, neither view accurately represents the reality of the situation.

Instead, our analysis has proceeded from the fact that the defendants were actually tried for simple imprisonment under the kidnapping counts and by their motions upset the result of that trial. In such circumstances, *Ball* allows a retrial on simple imprisonment. On the other hand, what the defendants attacked was the erroneous result of a trial for simple imprisonment. The fact that the trial error involved was an improper instruction which led to a conviction for armed imprisonment does not remove the bar to retrial for armed imprisonment erected under *Brown v. Ohio, supra,* and *Green v. United States, supra.*

For the reasons we have given, the order of the district court is modified to allow a new trial only on the simple imprisonment charge.

---

when the first indictment is defective does not necessarily extend to this case, where the first indictment fully charged kidnapping and properly included simple imprisonment. Second, the stamped package offense charged in the second indictment in *Ewell* was not a greater or lesser included offense of the original order form charge, so the rule reiterated in *Brown v. Ohio, supra,* did not apply. Third, the Court in *Ewell* was careful to distinguish *Green v. United States, supra,* apparently on the basis that no charge in the first *Ewell* indictment placed those defendants in any jeopardy that would be applicable to the stamped package charge in the second. 383 U.S. at 125 n.9, 86 S.Ct. 773. In the present case, of course, the defendants were placed in jeopardy as to simple imprisonment—jeopardy which was sufficient under *Brown* to bar subsequent prosecution for armed imprisonment—and *Green* precludes forcing the defendants to surrender that protection. *See United States v. Poll,* 538 F.2d 845, 847 n.1 (9th Cir. 1976) (recognizing the inapplicability of *Ewell* to a greater/lesser included offense situation). Finally, the continuing validity of *Ewell* on its own facts is uncertain in light of *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and its progeny.

The Government also relies on a statement in a footnote in *Crosby v. United States,* 119 U.S. App.D.C. 244, 245, 339 F.2d 743, 744 n.1 (D.C. Cir.1964). There the court of appeals reversed a conviction on an improper lesser included offense which bore the same relationship to the valid charges in that case as the armed imprisonment conviction did in this case. The court of appeals, in its footnote, said "[t]here would appear to be no impediment to re-indictment" on the improper lesser offense. The court cited no authority for its statement and did not expressly consider any double jeopardy issues in the case. Moreover, *Crosby* was decided before *Brown v. Ohio, supra.* For these reasons we find *Crosby* unpersuasive on the issue whether a retrial on armed imprisonment is barred by the Double Jeopardy Clause.