**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BOZO KELAVA,

*Petitioner,*

v.

ALBERTO R. GONZALES,* Attorney
General,

*Respondent.*

No. 03-73689

Agency No.
A18-715-040

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 9, 2005—San Francisco, California

Filed June 7, 2005

Before: Andrew J. Kleinfeld, Michael Daly Hawkins, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Hawkins

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

---

**COUNSEL**

Michael Aaron Harwin, Tucson, Arizona, for the petitioner.

Andrew C. MacLachlan (argued) and Russell J.E. Verby (briefed), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

---

**OPINION**

HAWKINS, Circuit Judge:

Bozo Kelava, a Croatian national, seeks review of a decision by the Board of Immigration Appeals ("BIA"). The BIA concluded Kelava was ineligible for a discretionary waiver of inadmissibility or cancellation of removal for having engaged in terrorist activity. In an issue of first impression, Kelava argues it is impermissibly retroactive to deny him eligibility for previously available discretionary relief, relying on the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001). We deny his petition.

**FACTS AND PROCEDURAL HISTORY**

Kelava, an anti-communist dissident, came to the United States from the Croatian region of the former Yugoslavia as a refugee in 1969. He became a legal permanent resident in 1972.

In the late 1970's, the Federal Republic of Germany ("West Germany") began deporting and extraditing Croatian dissi-

dents to Yugoslavia where they were allegedly being tortured and executed. In April 1978, Kelava and another man entered the West German Consulate in Chicago, armed with handguns, ropes and a phony bomb. *United States v. Kelava*, 610 F.2d 479, 480 (7th Cir. 1979). They seized several employees (including a Consular Officer), demanding that West Germany refuse to extradite Stepan Bilandzic, a prominent Croatian dissident, to Yugoslavia. After being permitted to speak with Bilandzic, Kelava and his cohort released the hostages unharmed. *Id.*

Kelava and his companion were initially indicted and convicted in federal court of conspiracy and kidnapping of foreign officials, but the district court judge later determined that he had erred in instructing the jury on a lesser included offense and ordered a new trial. The government then obtained a new indictment charging the defendants with armed imprisonment, based on the same facts. On appeal, the Seventh Circuit determined that the defendants could be retried, but only for simple (unarmed) imprisonment, because this was a lesser included offense of the original kidnapping indictment. *Id.*

In January 1980, Kelava pled guilty to one charge of unarmed imprisonment of a foreign national, and was sentenced to two and a half years in prison. Nearly 20 years later — shortly after Kelava applied for naturalization a third time — the INS[1] commenced removal proceedings against Kelava, alleging he was removable for having been convicted of an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). In June 2000, the INS filed an additional charge, alleging

---

[1]The INS was abolished effective March 1, 2003, and its functions transferred to the newly formed Department of Homeland Security. *See* 6 U.S.C. § 542. As the agency was known as the INS at all times pertinent to this appeal, we refer to it as such in this opinion.

Kelava was removable for having engaged in terrorist activity under 8 U.S.C. § 1227(a)(4)(B).[2]

The Immigration Judge ("IJ") sustained both allegations and determined that, as a result, Kelava was precluded from seeking a waiver of inadmissibility under former § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c), commonly referred to as a "§ 212(c) waiver."[3] On appeal, the BIA failed to address the IJ's determination that Kelava had been convicted of an aggravated felony, and instead affirmed the removal under the terrorist activity charge. The BIA also rejected Kelava's argument that he could nonetheless seek § 212(c) relief. Kelava timely petitioned this court for review.

## DISCUSSION

### I.    Jurisdiction

We begin by noting that, although the IJ found Kelava removable for being convicted of an aggravated felony, we are not deprived of jurisdiction to hear his appeal under 8 U.S.C. § 1252(a)(2)(C), because the BIA chose not to address the aggravated felony conviction in its decision, basing its decision solely on the terrorist activity charge.

---

[2]"Terrorist activity" is defined as "[t]he seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person . . . to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained." 8 U.S.C. § 1182(a)(3)(B)(iii)(II).

[3]Section 212(c) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") § 304(b), and was replaced with a new form of discretionary relief called cancellation of removal, codified at 8 U.S.C. § 1229b. *See Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1118 & n.1 (9th Cir. 2002) (describing history). Kelava is ineligible for relief under this new provision because he is deportable for having engaged in terrorist activity. 8 U.S.C. § 1229b(c)(4).

We addressed a similar situation in *Toro-Romero v. Ashcroft*, 382 F.3d 930 (9th Cir. 2004). There, the IJ found Toro-Romero removable for having been convicted of a crime involving moral turpitude and for falsely representing himself as a United States citizen. While § 1252(a)(2)(C) would have prohibited this court's jurisdiction over the moral turpitude removal, the BIA affirmed Toro-Romero's removal only on the false representation ground, expressly declining to decide any other issues raised by Toro-Romero on appeal. *Id.* at 932-33. We explained that our review is limited to the BIA's decision, and the sole ground for the final order of removal was therefore Toro-Romero's false representation. *Id.* at 934-35. Thus, we concluded we did have jurisdiction over the petition for review. *Id.* at 935.

**[1]** Likewise, in this case, although the IJ found Kelava removable on both reviewable and nonreviewable grounds, the BIA affirmed only the terrorist activity charge, expressly declining to reach the other issues presented. Even if the BIA could have found Kelava removable as an aggravated felon, it did not. Accordingly, we have jurisdiction over Kelava's petition, at least with respect to the continued availability of § 212(c) relief for those who engaged in a terrorist activity prior to the elimination of such relief.[4]

## II.   Availability of § 212(c) relief

The BIA agreed with the IJ that Kelava was removable because he had engaged in terrorist activity following his admission to the United States. Kelava does not contest his removability, but contends that the BIA erred by holding that, as a result, he is ineligible for a § 212(c) waiver.[5] He relies by analogy on *INS v. St. Cyr*, 533 U.S. 289 (2001).

---

[4]In his opening brief, Kelava also asserts that he remains eligible for § 212(c) relief even though convicted of an aggravated felony. Because the BIA did not affirm the aggravated felony ground for removal, this argument is not properly before us in this appeal. For the same reason, we deny Kelava's Motion for Leave to File Supplemental Brief.

[5]At least, Kelava did not contest his removability on this ground before the BIA or in his briefs to this court. At oral argument, Kelava appeared

**[2]** In *St. Cyr*, the Supreme Court addressed the retroactive effect of IIRIRA § 304(b), which repealed INA § 212(c), on aliens who were otherwise eligible for such relief but had pled guilty to an aggravated felony prior to IIRIRA's enactment. The Court first considered whether Congress clearly directed the law to be applied retrospectively, concluding that it had not. 533 U.S. at 316-20.

**[3]** The Court then determined whether the application of the statute would result in a retroactive effect. *Id.* at 320. The Court noted that a statute has retroactive effect when it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* at 321 (internal quotation marks omitted). The Court went on to conclude that the elimination of § 212(c) relief for those who entered into plea agreements prior to the enactment of IIRIRA attached such a new disability to considerations already past. *Id.* at 321.

**[4]** The Court explained that "[t]here can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." *Id.* at 322. The Court noted that § 212(c) waivers were granted rather frequently leading up to IIRIRA, and that preserving eligibility for such relief was "one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." *Id.* at 323. The Court thus concluded that § 304(b) was not retroactive, and that therefore § 212(c) relief remained available to aliens whose convictions were obtained

---

to shift his argument and contest the retroactive application of the "terrorist activity" definition. Because he failed to exhaust this issue before the BIA, we lack jurisdiction to consider this argument, and express no opinion on the merits of his argument. *See Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004).

through plea agreements and who would have otherwise been eligible for § 212(c) relief at the time of their plea. *Id.* at 326.

**[5]** Relying on *St. Cyr*, Kelava argues that because he pled guilty in 1980, IIRIRA § 304(b) should not preclude him from seeking relief under § 212(c) either.[6] What Kelava fails to recognize is that his removability does not hinge on a "conviction." To prove removability, the government need only establish that Kelava "engaged in" a terrorist activity "at any time after admission"; there is no requirement that he be "convicted of" engaging in such actions. 8 U.S.C. § 1227(a)(4)(B).

In *St. Cyr*, on the other hand, the guilty plea supplied the conviction necessary for removal. The Court thus focused on the considerations present when the alien decided to plea instead of going to trial, noting that competent defense counsel would have advised the alien of the immigration consequences of a plea. 533 U.S. at 322-23 & n.50. The Court seemed concerned that the alien had detrimentally relied on the availability of § 212(c) relief in entering the plea, giving rise to "settled expectations" that would be disrupted by the retroactive application of IIRIRA § 304(b). *Id.* at 323-24.

**[6]** In Kelava's case, however, there is no independent significance to his plea — he is undisputedly removable based on his actions in 1978, regardless of his later decision to plead guilty. This does not end the inquiry, but shifts the focus from the guilty plea to the actual commission of the act. In this circuit, that distinction is significant. We have cabined *St. Cyr*

---

[6]Actually, IIRIRA was not the first time Congress eliminated § 212(c) relief for those who had engaged in "terrorist activities" — this initially occurred in 1990 with the passage of the Immigration Act of 1990 ("IMMACT"), pursuant to § 601(d) of that Act. Thus, Kelava also argues that § 601(d) of IMMACT is not retroactive. If either Act can apply to him, Kelava is ineligible for § 212(c) relief. Because we conclude there is no problem in applying IIRIRA § 304(b) to Kelava, we need not consider the retroactivity of IMMACT.

to the plea context, because of the alien's reliance on existing law in that situation.

**[7]** After *St. Cyr*, we reaffirmed our prior holding that there was no retroactive effect in applying § 440(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA") — which negated § 212(c) relief for aliens who committed a qualifying controlled substance offense or an aggravated felony — to aliens who elected a jury trial instead of pleading guilty, because they "cannot plausibly claim that they would have acted any differently if they had known" about the elimination of § 212(c) relief, even though the criminal act and conviction occurred before the statute's amendment. *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1121-22 (9th Cir. 2002); *accord Thom v. Ashcroft*, 369 F.3d 158 (2d Cir. 2004), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Feb. 24, 2005) (No. 04-9116). In *Armendariz*, we approvingly quoted the Seventh Circuit, which pointed out the absurdity of arguing that one would not have committed a crime in the first place, or might have resisted conviction more vigorously, if he had known he could not ask for a § 212(c) waiver. 291 F.3d at 1121 (quoting *LaGuerre v. Reno*, 164 F.3d 1035, 1041 (7th Cir. 1998)); *see also Khan v. Ashcroft*, 352 F.3d 521, 523 (2d Cir. 2003) (noting that "it cannot reasonably be argued that aliens committed crimes in reliance on such a possibility [of § 212(c) relief]" (internal quotation marks omitted)).[7]

**[8]** It is just that sort of argument that Kelava would have to make: because there is no special immigration significance to his guilty plea, in order to demonstrate reliance or any sort of "settled expectations" on the existing immigration laws, he would have to assert that he would not have committed the

---

[7]We recognize that some other circuits have disagreed with this approach, arguing that some sort of reliance by an alien on existing immigration laws is not a requisite in the retroactivity analysis. *See Olatunjy v. Ashcroft*, 387 F.3d 383 (4th Cir. 2004); *Ponnapula v. Ashcroft*, 373 F.3d 480 (3rd Cir. 2004).

terrorist activity in 1978 if he had known that he might become ineligible for discretionary relief from removal. Consistent with *Armendariz's* rejection of this argument, we hold there is no retroactive effect in applying the IIRIRA elimination of § 212(c) relief to Kelava, who quite clearly engaged in the requisite terrorist activity prior to IIRIRA's enactment.[8]

PETITION DENIED.

---

[8]Because of our holding, we need not reach the government's argument that even in 1978 and at the time of Kelava's plea in 1980, his activities rendered him ineligible for § 212(c) relief. Under the law that existed at that time, § 212(c) relief was not available to aliens who "advocate or teach or who are members or affiliated with an organization that advocates or teaches . . . (ii) the duty, necessity, or propriety of the unlawful assaulting or killing of an officer or officers of the Government of the United States or any other organized Government because of his or their official character." 8 U.S.C. § 1182(a)(28)(F)(ii) (1976).