Jewel A. HOUP, Appellant,

v.

The STATE OF NEBRASKA, Paul L. Douglas, William C. Hastings and Herbert A. Ronin, Appellees.

No. 19918.

United States Court of Appeals, Eighth Circuit.

June 8, 1970.

Alan C. Kohn of Coburn, Croft, Kohn & Herzog, St. Louis, Mo., for appellant; John R. Musgrave, St. Louis, Mo., on the brief.

William D. Blue, Lincoln, Neb., for appellees; Paul L. Douglas, Lincoln, Neb., on the brief.

Before GIBSON, LAY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Jewel Houp, who has been twice tried and twice found guilty of the same offense of larceny in Nebraska courts, sought to have the United States district court declare that he twice had been placed in jeopardy of "life or limb" contrary to the protection afforded him by the Fifth Amendment to the United States Constitution. The district court, the Honorable Robert Van Pelt, dismissed Houp's claim.[1] Houp brought this timely appeal. For the reasons stated below, we affirm.

The issue arises in a somewhat unusual factual setting. Houp's travail commenced with an information charging him with larceny of a semi-trailer adapted to hauling grain. He was first tried on this charge before the Nebraska district court in Lancaster County between April 14 and April 18, 1967. During those proceedings, the state trial judge failed to notify the jury that it must, under Nebraska law, "ascertain and declare in its verdict the value of the property stolen", as required by Neb. R.S.Supp., Section 29-2026.01 (1967).

The Nebraska trial judge discovered this error after the jury had retired for deliberations. Thereafter, he discussed this omission with counsel for the parties. Both responded negatively to the

1. Judge Van Pelt's opinion is unreported.

court's inquiry whether further action should be taken before the jury returned. Thereafter, the jury declared Houp guilty on a form which did not specify the value of the property stolen. The court accepted the verdict, dismissed the jury and remanded Houp to the custody of the sheriff. These incidents occurred on April 18. Two days later, Houp moved that he be released from custody asserting that he could not "legally and constitutionally be deprived of his liberty * * * nor held again in jeopardy * * *" pursuant to the invalid verdict. The trial court overruled this motion. A few days later, sua sponte, the trial court set aside the guilty verdict and ordered that Houp be retried.

Houp appealed this determination to the Supreme Court of Nebraska, which rejected his claim that the Double Jeopardy Clause in the Nebraska Constitution barred retrial. State v. Houp, 182 Neb. 298, 154 N.W.2d 465 (1967). The Nebraska court characterized the initial verdict as a nullity, saying:

> The verdict in this case was the equivalent of a mistrial. It was within the authority and discretion of the trial court to set aside the verdict and order a new trial. The motion to discharge was properly overruled.

Nebraska retried Houp in March of 1968. The jury again found Houp guilty, this time returning the verdict upon an appropriate form. The court sentenced Houp to a term in the Nebraska penitentiary.

Houp instituted these declaratory judgment proceedings in the United States district court for redress of his civil rights pursuant to 28 U.S.C. §§ 2201, 2202 and 28 U.S.C. § 1343(3). Judge Van Pelt stayed proceedings pending

Houp's appeal from his second conviction on the larceny charge. After the Nebraska Supreme Court again affirmed, this time on the issue of sufficiency of the evidence to sustain the conviction, State v. Houp, 184 Neb. 206, 166 N.W.2d 117 (1969), Judge Van Pelt considered the merits of Houp's complaint [2] and denied him relief.

The hoary antecedents [3] of double jeopardy protection—*nemo debet bis vexari pro eadem causa*, no one shall be twice vexed for the same cause—rests on man's abhorrence to the power of government to try a man twice for the same conduct. The constitutional double jeopardy concept embodies the idea that:

> * * * [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he be found guilty. Green v. United States, 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

Not all retrials are barred. The rule is well-established in our constitutional jurisprudence that the government may retry a defendant whose conviction is set aside on his own request due to an error in the proceedings. Ball v. United States, 163 U.S. 662, 671–672, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The exception to the application of double jeopardy in these cases has been explained on the theory of waiver, Trono v. United States, 199 U.S. 521, 533, 26 S.Ct. 121, 50 L.Ed. 292 (1905), as well as on a theory of continuing jeopardy—

2. Judge Van Pelt acknowledged that federal double jeopardy applies to the states by virtue of the Fourteenth Amendment and, in so doing, he anticipated the Supreme Court holdings in Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); and Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189,

25 L.Ed.2d 469 (1970). See and compare Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (majority opinion fn. 2 and the footnote in the concurring opinion, Brennan, J.) (1970).

3. Mr. Justice Black, dissenting, discusses these antecedents in Bartkus v. Illinois, 359 U.S. 121, 150–155, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

that the original jeopardy survives to the end of the cause—Kepner v. United States, 195 U.S. 100, 134, 24 S.Ct. 797, 49 L.Ed. 114 (1904) (Holmes, J., dissenting). More recently, a majority opinion of the Supreme Court characterized these rationales as "conceptual abstractions" which should yield to the general principle that "the sound administration of justice" will justify the retrial of an accused in appropriate circumstances. United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

██ We here, however, concern ourselves with that category of cases in which the accused's trial has terminated short of completion and without the accused requesting a retrial. The rubric "manifest necessity", a term coined by Mr. Justice Story in United States v. Perez, 22 U.S. (9 Wheat. 579) 579, 6 L.Ed. 165 (1824), describes those situations in which the accused subject to an aborted trial may be retried.

> \* \* \* [I]n all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes \* \* \*. 9 Wheat. at 580.

This doctrine possesses continuing vitality. See United States v. Tateo, *supra*, 377 U.S. at 467, 84 S.Ct. 1587; Downum v. United States, 372 U.S. 734, 735–736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Gori v. United States, 367 U.S. 364, 368–369, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).

This necessity tenet dictates no mechanical application of an abstract formula. All circumstances must be considered. Each case turns on its own particular facts. *Downum, supra,* 372 U.S. at 737, 83 S.Ct. 1033. For example, in applying this doctrine, the Supreme Court has ruled double jeopardy inapplicable to a mistrial resulting from a jury disagreement (Keerl v. Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734 (1909); *Perez, supra*), and inapplicable to a mistrial resulting from disqualification of a juror (Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894); Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891)).

In cases of this kind, the court is called upon to weigh factual circumstances in determining whether the interests of society or the rights of an individual shall predominate. The evaluation of such circumstances has produced a lack of unanimity in the Court's opinions in particular cases. In *Tateo, supra*, 377 U.S. 463, 84 S.Ct. 1587, the accused aborted his own trial by pleading guilty. Through a later collateral attack, a federal district court set aside the conviction as one based upon a coerced plea of guilty. Thereafter, another federal district judge dismissed the charges reasoning that double jeopardy precluded any new trial since the accused had neither genuinely consented to the termination of the first trial nor waived the double jeopardy claim. In a six-to-three decision, the Supreme Court reversed and permitted the accused's retrial. In *Downum, supra*, 372 U.S. 734, 83 S.Ct. 1033, the trial court postponed the accused's trial and discharged the jury which had been selected upon the prosecution announcing that it was not ready to proceed on all counts. The Supreme Court, in a five-to-four decision, denied the government's right to retry the defendant. In *Gori, supra*, 367 U.S. 364, 81 S.Ct. 1523, the trial court declared a mistrial to forestall the prosecutor from introducing improper evidence concerning other crimes committed by the accused. The Supreme Court, by

a five-to-four majority, authorized a re-trial.

It seems to us that the Supreme Court relied on special circumstances in each case. In *Downum, supra,* it denied a retrial when the grant of a mistrial served to benefit the interests of the prosecution. Conversely, in *Gori, supra,* when the grant of a mistrial served the interest of the accused, the Court authorized a retrial. In *Tateo, supra,* the fact that the accused had been found guilty weighed heavily in the determination that the Double Jeopardy Clause would not bar another trial.

■ By granting Houp a new trial on its own motion, the Nebraska trial court corrected its error and afforded the defendant a second opportunity to defend against the state's charge. It might have entered a judgment of conviction and forced Houp to appeal in order to rectify the omission in the verdict and obtain a retrial. Double jeopardy clearly would then not apply. *Ball, supra,* 163 U.S. 662, 16 S.Ct. 1192. In addition, the Nebraska Supreme Court's characterization of the first jury verdict as one possessing insufficient force to support a sentence serves conceptually to equate that verdict with a jury disagreement such as in *Perez, supra,* 22 U.S. (9 Wheat. 579) 579. These considerations weigh heavily against Houp and impel our conclusion that the Double Jeopardy Clause did not bar his retrial by the State of Nebraska.

Houp also argues that, having once faced a jury, he must go free since no "unforeseeable circumstances" prevented the trial court from correcting its error in the first trial prior to the time that the jury reported its verdict. Specifically, Houp asserts that the prosecutor and the trial judge, on becoming aware of the error, should have arranged for the recall of the jury from its deliberations in order to furnish it with additional instructions.

The phrase "unforeseeable circumstances" appears in Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), a case dealing with the exigencies of military court martials during wartime. In that case, the first court martial of the accused dissolved without finally concluding the case. Thereafter, the accused was placed on trial and convicted of a serious offense by a second court martial. The Supreme Court, by a six-to-three majority, refused to apply double jeopardy to the second trial. Mr. Justice Black used the phrase quoted by Houp in the following context:

> There may be *unforeseeable circumstances* that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again. And there have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of a jury might be biased against the Government or the defendant. It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial. What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments. (Emphasis added, footnote omitted.) *Wade, supra,* 336 U.S. at 689, 69 S.Ct. at 837.

A reading of the full paragraph indicates that this term refers to the identical type of cases to which the concept of manifest necessity applies as articulated in *Perez, supra,* 22 U.S. (9 Wheat. 579) 579. This phrase initiates no new "jeopardy" guideline.

Further, the giving of an additional instruction to cure the error might have operated to prejudice Houp's interest by focusing the jury's special attention at the court's suggestion upon a verdict of guilty. Assuming that the jury returned the same verdict, Houp undoubtedly would claim prejudice from the court's

additional instructions. See Potard v. State, 140 Neb. 116, 299 N.W. 362 (Neb. 1941). Compare Chicago, Rock Island, Pac. Ry. v. Speth, 404 F.2d 291 (8th Cir. 1968). Houp demonstrates no basis for reversal with this argument.

The fact that Houp did not request a new trial, a request that undoubtedly would have been granted, is immaterial in resolving the double jeopardy issue. The opinion of the majority in *Tateo, supra,* 377 U.S. at 467–468, 84 S.Ct. at 1590, notes:

> If Tateo had *requested* a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him. See Gori v. United States, 367 U.S., at 368, 81 S.Ct. at 1526; see also 367 U.S., at 370, 81 S.Ct. at 1527 (dissenting opinion of DOUGLAS, J.). Although there may be good reasons why Tateo and his counsel chose not to make such a motion before the trial judge, it would be strange were Tateo to benefit because of his delay in challenging the judge's conduct. (Footnotes omitted.)

The trial judge needs to possess some limited leeway to grant a mistrial on his own motion, without immunizing the defendant from a retrial, as a means of assuring the defendant a fair trial. Mr. Justice Harlan appropriately commented in *Tateo, supra:*

> It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants'

rights as well as society's interest. 377 U.S. at 466, 84 S.Ct. at 1589. See also *Gori, supra,* 367 U.S. 364, 369–370, 81 S.Ct. 1523. This limited discretion should be sparingly exercised since many experienced trial lawyers will forego a motion for a mistrial in favor of having his client's case decided by the jury selected to hear that case. See *Tateo, supra,* 377 U.S. at 474, 84 S.Ct. 1587 (Goldberg, J., dissenting).

Our examination of this record convinces us that in these particular and peculiar circumstances, Houp's second trial falls outside the federal constitutional bar of double jeopardy.

Affirmed.