# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1207

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Cornelius Peoples, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 11, 2003

Filed: March 16, 2004

_____

Before WOLLMAN, McMILLIAN, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Because we believe that the reasoning in <u>Sattazahn v. Pennsylvania</u>, 537 U.S. 101 (2003), extends to the facts of this case, we affirm the district court's[1] denial of Cornelius Peoples's motion to strike the government's notice of intent to seek the death penalty on retrial.

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

## I.

Peoples and his co-defendant, Xavier Lightfoot, were indicted and tried for the federal crimes of murder of a federal witness (first-degree murder) and conspiracy to rob a credit union. 18 U.S.C. §§ 2113(a), 1111, 1512(a)(1) and 1512(a)(2). The government filed a notice of intent to seek the death penalty. The jury convicted both defendants during the guilt phase of the trial. During the penalty phase, the government presented evidence of aggravating factors against both Peoples and Lightfoot. It then bifurcated the remainder of the penalty phase, presented further evidence, and submitted only Lightfoot's penalty to the jury for consideration. The jury hung on Lightfoot's sentence, and the district court entered the default sentence of life in prison.[2] At that point, because the government did not believe that the jury would impose the death penalty against Peoples, it withdrew its notice of intent to seek the death penalty against him. The district court released the jury and entered the default sentence of life in prison without parole for Peoples.

On appeal, we reversed the convictions and remanded for a new trial. United States v. Peoples, 250 F.3d 630 (8th Cir. 2001). A second grand jury indicted Peoples and Lightfoot for the same crimes, adding an additional count of conspiracy to commit murder. The government again filed a notice of intent to seek the death penalty. Raising the claim of double jeopardy, Peoples and Lightfoot each filed a motion to strike the notice, which the district court denied. Peoples and Lightfoot both filed interlocutory appeals, but Lightfoot's appeal was later dismissed pursuant to his motion following the Supreme Court's decision in Sattazahn.

---

[2]Under the federal sentencing scheme, the defendant by statute receives "any lesser sentence that is authorized by law." 18 U.S.C. § 3594. In the case of the murder of a federal witness, the authorized penalty is life in prison. 18 U.S.C. § 1512(a)(2)(A).

## II.

The foundational principle in double jeopardy jurisprudence is that "no man can be twice lawfully punished for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (quoting Ex parte Lange, 18 Wall 163, 168; 21 L.Ed. 872); U.S. Const. amend. V. Once jeopardy has attached and terminated as to a particular offense, the government may not retry or punish the defendant again for the same offense. Pearce, 395 U.S. at 718. Jeopardy attaches in a jury trial when the jury is empaneled and sworn. United States v. Curry, 328 F.3d 970, 972 (8th Cir. 2003). Some event must terminate the original jeopardy before the double jeopardy protection of the fifth amendment prevents reprosecution for the same offense. Richardson v. United States, 468 U.S. 317, 325 (1984). Without a terminating event, jeopardy continues from one proceeding to the next. Jeopardy typically terminates if there is an acquittal or if the judge declares a mistrial when there is neither manifest necessity nor the defendant's consent. See, e.g., Arizona v. Rumsey, 467 U.S. 203, 210-11 (1984) (stating one may not face retrial after an acquittal); United States v. Dixon, 913 F.2d 1305, 1310 (8th Cir. 1990) (stating that a mistrial will bar retrial unless it is required by manifest necessity or the defendant consents). The test for "manifest necessity" is not precise, but often comes down to a calculus of when the public interest establishes a "high degree" of need to allow a retrial. Arizona v. Washington, 434 U.S. 497, 505-06 (1978). We review de novo a district court's denial of double jeopardy protection. United States v. Beeks 266 F.3d 880, 882 (8th Cir. 2001) (per curiam).

Jeopardy separately attaches to the penalty phase of a capital trial, and the guilt and penalty phases of the trial are treated as separate proceedings for purposes of double jeopardy analysis. See Bullington v. Missouri, 451 U.S. 430, 445-46 (1981). The penalty phase in a capital trial is more than mere sentencing. It is a separate proceeding in which the prosecution has to prove additional facts beyond a reasonable doubt before the jury can find death appropriate. Id. at 438. Jeopardy

attached for purposes of the penalty phase when the jury reconvened and the government began to present evidence on the aggravating factors for both Peoples and Lightfoot.

The Supreme Court has applied several double jeopardy principles in capital cases. The touchstone principle in capital sentencing proceedings is that jeopardy terminates and provides finality for the penalty phase if there is an acquittal of death. Sattazahn, 537 U.S. at 109. The mere imposition of a life sentence is not enough; there must be an affirmative choice by the jury not to impose a death sentence. Id. at 107. If the jury finds that the prosecutor failed to prove the aggravating circumstances and unanimously sentences the defendant to life in prison, it has acquitted him of death as a possible penalty. Rumsey, 467 U.S. at 210-11. In contrast, if there has been no acquittal by judge or jury, the defendant may again be subjected to the penalty of death. Poland v. Arizona, 476 U.S. 147, 156-57 (1986). If the jury deliberates but fails to reach a conclusion, it has neither acquitted the defendant of death nor found that he is legally entitled to a life sentence. Sattazahn, 537 U.S. at 109-10. A non-capital case with a hung jury usually results in an automatic retrial based on "manifest necessity." Washington, 434 U.S. at 509-10. Jeopardy continues, establishing a "slate wiped clean" for the jury in the second trial. Pearce, 395 U.S. at 719-21. A hung jury in the penalty phase of a capital trial results in a default sentence instead, but the principle is the same: if the conviction is reversed, the prosecution may again seek the death penalty, subject to no jeopardy limitations at either the guilt or penalty phases of the trial. Sattazahn, 537 U.S. at 114-15.

We conclude that the reasoning in Sattazahn extends to the situation in this case. Peoples was not acquitted of death by the jury or the court, so jeopardy continued and the second indictment began a new proceeding on a clean slate. The jury did not acquit Peoples, for it made no findings regarding the aggravating circumstances, and the district court entered the sentence required by law only

because the penalty phase terminated without such a factual resolution. See Sattazahn, 537 U.S. at 109-10. The district court made no separate legal determination, but responded to the request, agreed upon by both parties, to terminate the case and enter a life sentence. Although Peoples asserts that his case is distinguishable from Sattazahn because his jury was not given an opportunity to consider his penalty, we do not find the distinction persuasive. As in Sattazahn, it is equally true in this case that no factfinder made "'findings sufficient to establish legal entitlement to the life sentence,'" id. at 109 (quoting Rumsey, 467 U.S. at 211), and thus the factual question about the aggravating circumstances related to Peoples' conviction remained unresolved.

The Court in Sattazahn indicated that a legal entitlement not to receive a death sentence may generally arise only when there is an acquittal. It examined the possibility of a narrow exception based on legislative intent in enacting the default sentence but rejected that possibility, concluding that Pennsylvania's choice to establish a default sentence was based on an interest in closure and the preservation of resources, factors that become irrelevant if a case has to be tried again anyway. 537 U.S. at 110. Similarly, the government's intent in the context of Peoples's case does not establish an exception to the acquittal requirement. The government chose to end the penalty phase based on practical considerations; its choice to do so did not by itself create binding legal conclusions.

Although defendants in Peoples's situation will be faced with the choice between appealing and possibly facing the death penalty again, or accepting a sentence of life in prison, Sattazahn holds that such a choice is not determinative of double jeopardy. 537 U.S. at 114-15. The government did not know there would be a second trial when it chose to withdraw the death penalty as against Peoples, and it is seeking now only that which it sought at the outset of the first trial. Accordingly, this case does not present the specter of "'an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on

having the issue of guilt submitted to the first trier of fact.'" Id. (quoting United States v. Scott, 437 U.S. 82, 96 (1978)).

Peoples argues that if we do not find a double jeopardy bar, we should nevertheless find that a presumption of vindictiveness applies to the government's choice to seek the death penalty at the retrial. We decline to do so. A presumption of vindictiveness arises only when the prosecutor chooses to bring a more serious charge against a defendant in a second trial. Blackledge v. Perry, 417 U.S. 21, 28-29 (1974). No "potential for vindictiveness," id. at 28, arises when the government proceeds in the same way on remand as it did in the first trial. Here, the government does not intend to bring a more serious charge against Peoples in the second trial, so the due process concern present in Blackledge is not implicated. Peoples faces almost identical charges, including the filing of a notice of intent to seek the death penalty. The withdrawal by the government of its intent to seek the death penalty at the first trial has not put Peoples in a situation worse than that which he faced during the first trial, and thus he has no more plausible a claim of prosecutorial vindictiveness than does any defendant who has been successful in overturning his conviction on appeal.

The denial of the motion to strike is affirmed.

RILEY, Circuit Judge, concurring.

This case presents the following issue of first impression: Did jeopardy terminate when the government unilaterally withdrew its notice of intent to seek the death penalty against Peoples, which occurred only after the government presented joint aggravating evidence against Peoples and Lightfoot to a sworn and empaneled jury ready to decide both men's fate, and only after the jury was unable to reach a unanimous sentencing verdict against Lightfoot, whom the government viewed as more culpable than Peoples? To conclude jeopardy terminated when the government withdrew Peoples' case from a jury sworn and empaneled to decide Peoples'

sentence, we would need to expand older Supreme Court precedent of dubious application and constrict the principles enunciated in more recent decisions.

I write separately to discuss Peoples' contention that the government's unilateral withdrawal of Peoples' sentencing case from a sworn and empaneled jury terminated jeopardy. I specifically address the potential application of questionable Supreme Court precedent argued by Peoples. Before doing so, I will first discuss the expansion–and recent constriction–of double jeopardy principles to sentencing.

## A.      No Acquittal, No Termination

Until 1981, the Supreme Court opposed attempts to extend double jeopardy protection to sentencing. See Bullington v. Missouri, 451 U.S. 430, 437-38 (1981). Before Bullington, the Court generally reasoned that "the Double Jeopardy Clause imposes no absolute prohibition against the imposition of a harsher sentence at retrial after a defendant has succeeded in having his original conviction set aside." Id. at 438. The Court, in Bullington, discovered that, when sentencing procedures in a capital murder case "have the hallmarks of the trial on guilt or innocence," and the factfinder decides the government failed to prove its case in sentencing, double jeopardy terminates and the government cannot seek death upon retrial. Id. at 439, 444, 446. The Court concluded that, "[h]aving received 'one fair opportunity to offer whatever proof it could assemble,' the State is not entitled to another." Id. at 446 (quoting Burks v. United States, 437 U.S. 1, 16 (1978)).

As this panel's opinion makes clear, jeopardy attached for Peoples when the sentencing phase began. The dispute is whether jeopardy terminated. The Supreme Court's decision last year in Sattazahn v. Pennsylvania, 537 U.S. 101, 109-10, 116 (2003), clearly precludes a valid double jeopardy argument by Lightfoot, Peoples' co-defendant, because the jury hung on Lightfoot's sentencing verdict. Because Peoples' sentencing case was not submitted to the jury, neither Sattazahn nor Bullington directly control. See id. (holding a hung jury in sentencing phase of capital trial does not terminate jeopardy); Bullington, 451 U.S. at 446 (holding

acquittal of death terminates jeopardy).  In  Peoples' case, we must decide whether to expand and apply <u>Bullington</u>'s double jeopardy principles.

Holding double jeopardy principles do not extend to non-capital sentencing proceedings, the Supreme Court recently constricted <u>Bullington</u> by defining <u>Bullington</u> as "a 'narrow exception' to the general rule that double jeopardy principles have no application in the sentencing context." <u>Monge v. California</u>, 524 U.S. 721, 724, 730 (1998).  The Supreme Court has also recognized <u>Bullington</u>'s limitation by making it "clear that an 'acquittal' at a trial-like sentencing phase, rather than the mere imposition of a life sentence, is required to give rise to double-jeopardy protections." <u>Sattazahn</u>, 537 U.S. at 107; <u>see</u> <u>also</u> <u>Arizona v. Rumsey</u>, 467 U.S. 203, 211 (1984) (reiterating double jeopardy protection focuses on an acquittal on the merits establishing an entitlement to a life sentence); <u>accord</u> <u>Poland v. Arizona</u>, 476 U.S. 147, 155-57 (1986) (holding no double jeopardy violation in seeking death penalty upon retrial when defendant was not acquitted in the first capital-sentencing proceeding).  According to the Supreme Court, "the touchstone for double-jeopardy protection in capital-sentencing proceedings is whether there has been an 'acquittal.'" <u>Sattazahn</u>, 537 U.S. at 109; <u>see</u> <u>also</u> <u>United States v. Perez</u>, 22 U.S. (9 Wheat) 579, 579-80 (1824) (holding discharge of hung jury without consent of defendant and without acquittal does not bar retrial).  Under the <u>Bullington</u>-<u>Sattazahn</u> line of cases, Peoples has no double jeopardy claim unless he can "establish that the jury or the court 'acquitted' him during his first capital-sentencing proceeding." <u>Sattazahn</u>, 537 U.S. at 107, 109.  Peoples cannot show the jury or the court acquitted him of death.

**B.     Withdrawal of Peoples' Case from the Jury**

The potential applicability of another Supreme Court case triggers my special concurrence.  In <u>Downum v. United States</u>, 372 U.S. 734 (1963), the federal government brought a number of charges against Downum.  After the jury was selected and sworn, the prosecutor asked that the jury be discharged because an essential witness was not available.  Downum asked the trial court to dismiss the

charges for want of prosecution. After the trial court denied the motion, discharged the jury, and called the case two days later for prosecution, Downum pled double jeopardy. When the Supreme Court confronted the double jeopardy issue, the Court characterized "[t]he situation presented [a]s simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict." Id. at 737 (quoting Cornero v. United States, 48 F.2d 69, 71 (9th Cir. 1931)). Noting "[e]ach case must turn on its facts," the Court held double jeopardy prohibited the retrial of the defendant, because a jury had been empaneled, sworn and discharged without reaching a verdict and without the defendant's consent. Id. at 735-38. In reaching this conclusion, the Court stated that "[t]he discretion to discharge the jury before it has reached a verdict is to be exercised 'only in very extraordinary and striking circumstances,'" because "the prohibition of the Double Jeopardy Clause is 'not against being twice punished, but against being twice put in jeopardy.'" Id. at 736 (citations omitted).[3]

I must digress to mention another factual matter in Peoples' case. The government argues Peoples consented to the withdrawal of the notice of intent to seek the death penalty, which precludes Peoples from now seeking the shelter of the Double Jeopardy Clause. Our court seems to agree with this argument. If I could conclude Peoples consented to withdrawing his case from the jury, then Downum's reach might be limited because this case would not involve "an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who at least insisted on having the issue of guilt submitted to the first trier of fact." United States v. Scott, 437 U.S. 82, 96, 98-99 (1978) (holding a "defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury

_____

[3]Downum, Bullington and Sattazahn were each decided five to four, with sharp, philosophical divisions among the justices in each case, making our attempt to follow Supreme Court precedent even more challenging.

cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant"). The Supreme Court has concluded "the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." Id. at 99.

The record does not support a finding that Peoples consented to withdrawing his sentencing case from the jury. The government's withdrawal of its notice of intent to seek the death penalty was a unilateral act. The government withdrew its notice of intent to seek the death penalty and rested its sentencing case against Peoples before Peoples even had a chance to respond. Obviously, the government believed the only probable outcomes against Peoples were a hung jury or an acquittal of death. Once the government withdrew its notice of intent to seek the death penalty, Peoples received a life sentence by operation of law, the lightest sentence he could have received upon conviction. Surely double jeopardy protection does not require Peoples to demand his case be submitted to the jury so he could confront the risk, no matter how small, that this jury would determine he deserved death. Peoples did not have an effective choice.

The record shows Peoples never expressly consented to the government's withdrawal of its notice of intent to seek the death penalty. After the government announced the withdrawal and rested, the district court inquired only whether Peoples had any opposition to the withdrawal. Peoples expressed no opposition. Peoples may not have contested the withdrawal, but he did not consent for purposes of double jeopardy analysis. Therefore, we should not reject Downum based on Peoples' alleged consent to the government's decision to withdraw its notice of intent to seek the death penalty against Peoples.

After that digression, we return to Downum's rationale. In denying the government the opportunity to try Downum after withdrawing his case from an

empaneled and sworn jury, the Supreme Court stated that, "[a]t times the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interest–when there is an imperious necessity to do so." Downum, 372 U.S. at 736. The Court also declared that harassing "an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches." Id.; see also Burks, 437 at 11 ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.").

Throughout the Anglo-American history of jury trials, there has been "a strong tradition that once banded together a jury should not be discharged until it had completed its solemn task of announcing a verdict." Crist v. Bretz, 437 U.S. 28, 36 (1978). Indeed, Justice Joseph Story coined the phrase "manifest necessity" nearly two centuries ago to caution future courts against terminating trials short of completion:

> We think . . . the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner.

Perez, 22 U.S. at 580; see also Houp v. Nebraska, 427 F.2d 254, 256 (8th Cir. 1970) (recognizing courts are "called upon to weigh factual circumstances in determining whether the interests of society or the rights of an individual shall predominate").

-11-

Even though Peoples was not acquitted of death, what is the consequence in double jeopardy terms of the government's withdrawing the case from an empaneled and sworn jury ready to decide Peoples' sentence? Once the jury was unable to reach a sentencing verdict against Lightfoot, the government "formerly [withdrew] its notice to seek the death penalty on Mr. Peoples," and then rested. The "primary reason" the government withdrew Peoples' case from the jury was because the jury could not find death for Lightfoot, whom the government believed was more culpable than Peoples. The government argued to the jury during sentencing that Lightfoot was the most responsible party, and later admitted the same to the trial court upon withdrawal of the notice to seek the death penalty.

Thus, logic indicates the government predicted only two possible outcomes had Peoples' sentencing case been submitted to the jury: a hung jury or an acquittal of death. If Peoples' case had been submitted to the jury and the jury would have hung, as it did with Lightfoot, then Sattazahn would clearly control and jeopardy would not terminate. If the jury would have acquitted Peoples of death, Bullington would control and jeopardy would terminate.

The point is the jury was ready to decide Peoples' punishment, but had no chance to confer and decide his fate because the government withdrew the notice of intent to seek the death penalty. As jeopardy attached when the jury was sworn and empaneled, see Downum, 372 U.S. at 735-38, was the government required to submit its sentencing case against Peoples to this jury, as it did with its case against Lightfoot, or risk terminating jeopardy on the issue of death against Peoples?

Arguably, the government's refusal to submit its acknowledged weaker case against Peoples to the jury, only to seek death upon retrial, constitutes a repeated

-12-

attempt to get the death penalty against Peoples. See Bullington, 451 U.S. at 445.[4] Similarly, a plausible argument can be made that the government's seeking death upon retrial constitutes a "successive prosecution[] . . . so as to afford the prosecution a more favorable opportunity to convict." Downum, 372 U.S. at 736. The Double Jeopardy Clause frowns on this behavior by government. Although I do not contend this case involves prosecutorial manipulation, see, e.g., Illinois v. Somerville, 410 U.S. 458, 464 (1973) (noting prosecutorial manipulation may terminate jeopardy), it is obvious the government believed it was highly unlikely the jury would sentence Peoples to death in the first trial.[5] Upon retrial, the government now believes it has a more favorable opportunity to get a death sentence than it had in the first sentencing proceeding.

The Supreme Court has never extended Downum to cover a case like this one. Given the Supreme Court's recent Sattazahn decision focusing on acquittal, and the Court's consistent characterization of Bullington as a narrow exception to the rule that double jeopardy does not apply to sentencing, the Supreme Court should itself

---

[4]Applying the rationale traditionally applicable to guilt-phase proceedings, the Supreme Court adopted the same rationale to apply double jeopardy protection to sentencing-phase proceedings in a capital murder case: "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Id. (quoting Green v. United States, 355 U.S. 184, 187-88 (1957)).

[5]Whether the government can seek a greater penalty upon retrial is not the issue. See North Carolina v. Pearce, 395 U.S. 711, 719-20 (1969). The issue is whether the government can benefit from not submitting the case to the first jury standing ready to decide Peoples' punishment.

decide whether to extend <u>Downnum</u> to sentencing or to limit <u>Sattazahn</u>'s reach to cases where punishment was actually submitted to the jury. Thus, I concur.

_____