**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BOZO KELAVA,

*Petitioner,*

v.

ALBERTO R. GONZALES,* Attorney General,

*Respondent.*

No. 03-73689

Agency No.
A18-715-040

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 9, 2005—San Francisco, California

Opinion Filed June 7, 2005
Amended January 12, 2006

Before: Andrew J. Kleinfeld, Michael Daly Hawkins, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Hawkins

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

## COUNSEL

Michael Aaron Harwin, Tucson, Arizona, for the petitioner.

Andrew C. MacLachlan (argued) and Russell J.E. Verby (briefed), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## ORDER

The Opinion filed on June 7, 2005, and appearing at 410 F.3d 625 (9th Cir. 2005), is hereby amended, and the amended Opinion will be filed concurrently with this Order.

With the Opinion as amended, the panel has voted to deny Petitioner's Petition for Rehearing and Petition for Rehearing En Banc.

The full court has been advised of the Petition for Rehearing En Banc and no Judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The Petition for Rehearing and the Petition for Rehearing En Banc are DENIED.

No further petitions for rehearing or for rehearing en banc will be entertained by this court.

**OPINION**

HAWKINS, Circuit Judge:

Bozo Kelava, a Croatian national, seeks review of a decision by the Board of Immigration Appeals ("BIA"). The BIA concluded Kelava was ineligible for a discretionary waiver of inadmissibility or cancellation of removal for having engaged in terrorist activity. In an issue of first impression, Kelava argues it is impermissibly retroactive to deny him eligibility for previously available discretionary relief, relying on the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001). We deny his petition.

**FACTS AND PROCEDURAL HISTORY**

Kelava, an anti-communist dissident, came to the United States from the Croatian region of the former Yugoslavia as a refugee in 1969. He became a legal permanent resident in 1972.

In the late 1970's, the Federal Republic of Germany ("West Germany") began deporting and extraditing Croatian dissidents to Yugoslavia where they were allegedly being tortured and executed. In April 1978, Kelava and another man entered the West German Consulate in Chicago, armed with handguns, ropes and a phony bomb. *United States v. Kelava*, 610 F.2d 479, 480 (7th Cir. 1979). They seized several employees (including a Consular Officer), demanding that West Germany refuse to extradite Stepan Bilandzic, a prominent Croatian dissident, to Yugoslavia. After being permitted to speak with Bilandzic, Kelava and his cohort released the hostages unharmed. *Id.*

Kelava and his companion were initially indicted and convicted in federal court of conspiracy and kidnapping of foreign officials, but the district court judge later determined that he had erred in instructing the jury on a lesser included

offense and ordered a new trial. The government then obtained a new indictment charging the defendants with armed imprisonment, based on the same facts. On appeal, the Seventh Circuit determined that the defendants could be retried, but only for simple (unarmed) imprisonment, because this was a lesser included offense of the original kidnapping indictment. *Id.*

In January 1980, Kelava pled guilty to one charge of unarmed imprisonment of a foreign national, and was sentenced to two and a half years in prison. Nearly 20 years later — shortly after Kelava applied for naturalization a third time — the INS[1] commenced removal proceedings against Kelava, alleging he was removable for having been convicted of an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). In June 2000, the INS filed an additional charge, alleging Kelava was removable for having engaged in terrorist activity under 8 U.S.C. § 1227(a)(4)(B).[2]

The immigration judge ("IJ") sustained both allegations and determined that, as a result, Kelava was precluded from seeking a waiver of inadmissibility under former § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c), commonly referred to as a "§ 212(c) waiver."[3] On

---

[1]The INS was abolished effective March 1, 2003, and its functions transferred to the newly formed Department of Homeland Security. *See* 6 U.S.C. § 542. As the agency was known as the INS at all times pertinent to this appeal, we refer to it as such in this opinion.

[2]"Terrorist activity" is defined as "[t]he seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person . . . to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained." 8 U.S.C. § 1182(a)(3)(B)(iii)(II).

[3]Section 212(c) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") § 304(b), and was replaced with a new form of discretionary relief called cancellation of removal, codified at 8 U.S.C. § 1229b. *See Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1118 & n.1 (9th Cir. 2002) (describing history). Kelava is ineligible for relief under this new provision because he is deportable for having engaged in terrorist activity. 8 U.S.C. § 1229b(c)(4).

appeal, the BIA failed to address the IJ's determination that Kelava had been convicted of an aggravated felony, and instead affirmed the removal under the terrorist activity charge. The BIA also rejected Kelava's argument that he could nonetheless seek § 212(c) relief. Kelava timely petitioned this court for review.

## DISCUSSION

I.   Jurisdiction

We begin by noting that, although the IJ found Kelava removable for being convicted of an aggravated felony, we are not deprived of jurisdiction to hear his appeal under 8 U.S.C. § 1252(a)(2)(C), because the BIA chose not to address the aggravated felony conviction in its decision, basing its decision solely on the terrorist activity charge.

We addressed a similar situation in *Toro-Romero v. Ashcroft*, 382 F.3d 930 (9th Cir. 2004). There, the IJ found Toro-Romero removable for having been convicted of a crime involving moral turpitude and for falsely representing himself as a United States citizen. While § 1252(a)(2)(C) would have prohibited this court's jurisdiction over the moral turpitude removal, the BIA affirmed Toro-Romero's removal only on the false representation ground, expressly declining to decide any other issues raised by Toro-Romero on appeal. *Id.* at 932-33. We explained that our review is limited to the BIA's decision, and the sole ground for the final order of removal was therefore Toro-Romero's false representation. *Id.* at 934-35. Thus, we concluded we did have jurisdiction over the petition for review. *Id.* at 935.

[1] Likewise, in this case, although the IJ found Kelava removable on both reviewable and nonreviewable grounds, the BIA affirmed only the terrorist activity charge, expressly declining to reach the other issues presented. Even if the BIA could have found Kelava removable as an aggravated felon,

it did not. Accordingly, we have jurisdiction over Kelava's petition, at least with respect to the continued availability of § 212(c) relief for those who engaged in a terrorist activity prior to the elimination of such relief.[4]

## II.   Availability of § 212(c) relief

The BIA agreed with the IJ that Kelava was removable because he had engaged in terrorist activity following his admission to the United States. Kelava does not contest his removability, but contends that the BIA erred by holding that, as a result, he is ineligible for a § 212(c) waiver.[5] He relies by analogy on *INS v. St. Cyr*, 533 U.S. 289 (2001).

**[2]** In *St. Cyr*, the Supreme Court addressed the retroactive effect of IIRIRA § 304(b), which repealed INA § 212(c), on aliens who were otherwise eligible for such relief but had pled guilty to an aggravated felony prior to IIRIRA's enactment. The Court first considered whether Congress clearly directed the law to be applied retrospectively, concluding that it had not. 533 U.S. at 316-20.

**[3]** The Court then determined whether the application of the statute would result in a retroactive effect. *Id.* at 320. The Court noted that a statute has retroactive effect when it "takes away or impairs vested rights acquired under existing laws, or

---

[4] In his opening brief, Kelava also asserts that he remains eligible for § 212(c) relief even though convicted of an aggravated felony. Because the BIA did not affirm the aggravated felony ground for removal, this argument is not properly before us in this appeal. For the same reason, we deny Kelava's Motion for Leave to File Supplemental Brief.

[5] At least, Kelava did not contest his removability on this ground before the BIA or in his briefs to this court. At oral argument, Kelava appeared to shift his argument and contest the retroactive application of the "terrorist activity" definition. Because he failed to exhaust this issue before the BIA, we lack jurisdiction to consider this argument, and express no opinion on the merits of his argument. *See Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004).

creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* at 321 (internal quotation marks omitted). The Court went on to conclude that the elimination of § 212(c) relief for those who entered into plea agreements prior to the enactment of IIRIRA attached such a new disability to considerations already past. *Id.* at 321.

**[4]** The Court explained that "[t]here can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." *Id.* at 322. The Court noted that § 212(c) waivers were granted rather frequently leading up to IIRIRA, and that preserving eligibility for such relief was "one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." *Id.* at 323. The Court thus concluded that § 304(b) was not retroactive, and that therefore § 212(c) relief remained available to aliens whose convictions were obtained through plea agreements and who would have otherwise been eligible for § 212(c) relief at the time of their plea. *Id.* at 326.

**[5]** Relying on *St. Cyr*, Kelava argues that because he pled guilty in 1980, IIRIRA § 304(b) should not preclude him from seeking relief under § 212(c) either.[6] What Kelava fails to recognize is that his removability does not hinge on a "conviction." To prove removability, the government need only establish that Kelava "engaged in" a terrorist activity "at any time after admission"; there is no requirement that he be "convicted of" engaging in such actions. 8 U.S.C. § 1227(a)(4)(B).

---

[6]Actually, IIRIRA was not the first time Congress eliminated § 212(c) relief for those who had engaged in "terrorist activities" — this initially occurred in 1990 with the passage of the Immigration Act of 1990 ("IMMACT"), pursuant to § 601(d) of that Act. Thus, Kelava also argues that § 601(d) of IMMACT is not retroactive. If either Act can apply to him, Kelava is ineligible for § 212(c) relief. Because we conclude there is no problem in applying IIRIRA § 304(b) to Kelava, we need not consider the retroactivity of IMMACT.

In *St. Cyr*, on the other hand, the guilty plea supplied the conviction necessary for removal. The Court thus focused on the considerations present when the alien decided to plea instead of going to trial, noting that competent defense counsel would have advised the alien of the immigration consequences of a plea. 533 U.S. at 322-23 & n.50. The Court seemed concerned that the alien had detrimentally relied on the availability of § 212(c) relief in entering the plea, giving rise to "settled expectations" that would be disrupted by the retroactive application of IIRIRA § 304(b). *Id.* at 323-24.

**[6]** In Kelava's case, however, there is no independent significance to his plea — he is undisputedly removable based on his actions in 1978, regardless of his later decision to plead guilty. This does not end the inquiry, but shifts the focus from the guilty plea to the actual commission of the act. In this circuit, that distinction is significant. We have cabined *St. Cyr* to the plea context, because of the alien's reliance on existing law in that situation.

**[7]** After *St. Cyr*, we reaffirmed our prior holding that there was no retroactive effect in applying § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") — which negated § 212(c) relief for aliens who committed a qualifying controlled substance offense or an aggravated felony — to aliens who elected a jury trial instead of pleading guilty, because they "cannot plausibly claim that they would have acted any differently if they had known" about the elimination of § 212(c) relief, even though the criminal act and conviction occurred before the statute's amendment. *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1121-22 (9th Cir. 2002); *accord Thom v. Ashcroft*, 369 F.3d 158 (2d Cir. 2004), *cert. denied*, 126 S. Ct. 40 (2005). In *Armendariz-Montoya*, we approvingly quoted the Seventh Circuit, which pointed out the absurdity of arguing that one would not have committed a crime in the first place, or might have resisted conviction more vigorously, if he had known he could not ask for a § 212(c) waiver. 291 F.3d at 1121 (quoting *LaGuerre v.*

*Reno*, 164 F.3d 1035, 1041 (7th Cir. 1998)); *see also Khan v. Ashcroft*, 352 F.3d 521, 523 (2d Cir. 2003) (noting that "it cannot reasonably be argued that aliens committed crimes in reliance on such a possibility [of § 212(c) relief]" (internal quotation marks omitted)).[7] It is just that sort of argument that Kelava would have to make: because there is no special immigration significance to his guilty plea, in order to demonstrate reliance or any sort of "settled expectations" on the existing immigration laws, he would have to assert that he would not have committed the terrorist activity in 1978 if he had known that he might become ineligible for discretionary relief from removal.

In his petition for rehearing, Kelava suggests that we are free to disregard *Armendariz-Montoya* because it has been effectively overruled by the Supreme Court's recent decision in *Clark v. Martinez*, 125 S.Ct. 716 (2005). We disagree.

Clark is a case of simple statutory construction. Using the doctrine of constitutional avoidance, the Supreme Court had previously construed 8 U.S.C. § 1231(a)(6) to permit the detention of removable aliens for as long as "reasonably necessary." *Zadvydas v. Davis*, 533 U.S. 678, 689, 699 (2001). *Clark* simply holds that this interpretation also applied to the other two groups of aliens specifically referred to in the same statute. 125 S. Ct. at 722.

We see the *Landgraf*[8] retroactivity analysis employed in *St. Cyr* as a different animal. Although the first part of the test involves statutory construction to determine whether Congress meant a particular provision to apply to conduct occur-

---

[7]We recognize that some other circuits have disagreed with this approach, arguing that some sort of reliance by an alien on existing immigration laws is not a requisite in the retroactivity analysis. *See Olatunji v. Ashcroft*, 387 F.3d 383 (4th Cir. 2004); *Ponnapula v. Ashcroft*, 373 F.3d 480 (3d Cir. 2004).

[8]*See Landgraf v. USI Film Products*, 511 U.S. 244 (1994).

ring before the effective date of a new law, when the answer to that question is not clear, the test appears to shift to an "as applied" analysis — whether applying the current law would have an impermissible retroactive effect by, for example, upsetting the settled expectations of the person or class of persons challenging its application. *St. Cyr*, 533 U.S. at 321. Indeed, the Supreme Court itself has recognized that applying a new provision may have a precluded retroactive effect as to one group but not to another. *See Martin v. Hadix*, 527 U.S. 343, 361-62 (1999) (declining to apply PLRA attorney fee limits to work performed before effective date, but applying fee cap to work performed after effective date of act, even though both groups involved cases filed prior to passage of the Act); *see also id.* at 360 ("*[A]s applied* to work performed after the effective date of the PLRA, the PLRA has future effect on future work; this does not raise retroactivity concerns."(emphasis added)).

In this case, the language of the current statute is clear — § 212(c) relief is simply not available — but the question is whether *applying* the law in effect would have an impermissible retroactive effect. Reading *Clark* very broadly, Kelava argues that if applying it to *any* person or groups would have such an effect, then it cannot be applied even to persons or groups that do not have the same sort of reasonable, settled expectations.

Although *Clark* is a very recent case, the Supreme Court appears reluctant to extend its reach beyond cases involving statutory construction using the constitutional avoidance principle. *See Spector v. Norwegian Cruise Line Ltd.*, 125 S. Ct. 2169, 2182-83 (2005) (plurality opinion) (describing *Clark* as "simply a rule of consistent interpretation of the statutory words"); *id.* at 2187 (Thomas, J., concurring in part) ("Today's decision, then, cabins the *Clark* principle to apply only when the canon of constitutional avoidance is invoked to choose among ambiguous readings of a statute."). We are

therefore hesitant to use the broader reading of *Clark* that Kelava advocates to upset settled circuit precedent.

Finally, we note that the Supreme Court recently denied certiorari in *Thom v. Ashcroft*, 369 F.3d 158 (2d Cir. 2004), *cert. denied*, 126 S. Ct. 40 (2005). In *Thom*, the Second Circuit, like this circuit, took the position that aliens who did not plead guilty prior to IIRIRA do not have the same settled expectations as the aliens in *St. Cyr*, and therefore do not fall within its parameters. Notwithstanding the vocal dissent,[9] a lukewarm majority opinion,[10] and an apparent circuit split (*see supra* note 7), the Court declined to take the case. Although it is difficult to discern the reasons behind denials of certiorari, if *Clark* really means what Kelava argues, *Thom* would have been an excellent vehicle to clarify that *Clark*'s analysis applies in the retroactivity context. At a minimum, the Court has not clearly rejected the position that we and the Second Circuit have taken.

**[8]** A three-judge panel cannot disregard prior circuit precedent unless it has been effectively overruled by an intervening Supreme Court decision. *See Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc). While the intervening decision need not involve an identical issue, its implications do need to be sufficiently discernable so that the two cases are "clearly irreconcilable." *Id.* at 900. We do not believe the test is met in this case because, as described above, *Clark* is distinguishable, its application has apparently been limited by the Supreme Court itself, and the Supreme Court — by denying certiorari in *Thom* — declined to interfere with this circuit's analysis. Although Kelava's argument is interesting, in

---

[9]*Thom*, 369 F.3d at 167-73 (Underhill, J., dissenting).

[10]In *Thom*, Judge Calebresi, writing for the majority, indicated that he personally would agree with the dissent that IIRIRA's repeal of § 212(c) relief should operate prospectively only, but found himself precluded by prior Second Circuit authority from reaching such a conclusion. 369 F.3d at 163 n.6.

the end we remain bound by existing circuit precedent. There-
fore, consistent with *Armendariz-Montoya*'s rationale, we
hold there is no retroactive effect in applying the IIRIRA
elimination of § 212(c) relief to Kelava, who quite clearly
engaged in the requisite terrorist activity prior to IIRIRA's
enactment.[11]

PETITION DENIED.

---

[11]Because of our holding, we need not reach the government's argument
that even in 1978 and at the time of Kelava's plea in 1980, his activities
rendered him ineligible for § 212(c) relief. Under the law that existed at
that time, § 212(c) relief was not available to aliens who "advocate or
teach or who are members of or affiliated with any organization that advo-
cates or teaches . . . (ii) the duty, necessity, or propriety of the unlawful
assaulting or killing of any officer or officers (either of specific individu-
als or of officers generally) of the Government of the United States or of
any other organized Government because of his or their official charac-
ter." 8 U.S.C. § 1182(a)(28)(F)(ii) (1976).