**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AN NA PENG,
                              *Petitioner,*

                    v.

ERIC H. HOLDER JR., Attorney
General,
                              *Respondent.*

No. 06-75841

Agency No.
A042-725-947

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 13, 2011—Honolulu, Hawaii

Filed March 22, 2012

Before: Arthur L. Alarcón, Kim McLane Wardlaw, and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

**COUNSEL**

Maile M. Hirota (argued) and Ann C. Kemp (briefed), Lynch Ichida Thompson Kim & Hirota, Honolulu, HI, for the petitioner An Na Peng.

William C. Minick, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for respondent Attorney General Holder.

## OPINION

N.R. SMITH, Circuit Judge:

The enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which repealed the waiver of deportation under Immigration and Naturalization Act (INA) § 212(c), 8 U.S.C. § 1182(c), does not affect the right of aliens to use the § 212(c) waiver, when such aliens proceeded to trial and were convicted of a crime involving moral turpitude prior to the enactment of IIRIRA. Aliens charged with and convicted of a crime involving moral turpitude prior to the enactment of IIRIRA remain eligible for § 212(c) relief, regardless of whether they pleaded guilty or proceeded to trial. Such aliens can demonstrate reasonable reliance on § 212(c) prior to its repeal, because they may have acted differently had § 212 relief not been possible at such time.

However, the seven year residency requirement for a waiver of inadmissibility under INA § 212(h), which became effective on September 30, 1996, is not impermissibly retroactive when removal proceedings were commenced after that date. Further, requiring Legal Permanent Residents (LPRs) (who have been convicted of crimes involving moral turpitude) to acquire seven years of continuous presence in the United States, but not imposing the same seven year requirement on non-LPRs who have been convicted of the same crimes, does not violate equal protection. We therefore grant the petition in part, deny it in part, and remand for further proceedings consistent with this opinion.[1]

---

[1]We have jurisdiction over this petition for review pursuant to 8 U.S.C. § 1252(a).

## BACKGROUND

An Na Peng is a native and citizen of China. She legally entered the United States on May 3, 1991 as an LPR based upon her marriage to Huan Zhang Wang, an LPR. She and her husband have two United States citizen children.

In the mid-1990s, the Immigration and Naturalization Service (INS)[2] had authorized the Naturalization Assistance Service and its affiliates to administer naturalization examinations. During those years, Peng worked for a short time at an affiliate's testing facility. Employees of that testing facility, including Peng, were caught providing answers to examinees and changing incorrect answers on completed exams. In January 1996, a grand jury indicted Peng on one count of a conspiracy to defraud the INS, in violation of 18 U.S.C. § 371 (1995).[3] Peng pleaded not guilty to the indictment.

Upon indictment, this criminal prosecution presented potential immigration consequences to Peng. First, if convicted, Peng would be guilty of a crime involving moral turpitude. Second, at the time of Peng's indictment, a conviction would have rendered Peng deportable if she ultimately *received* a sentence of one or more years of imprisonment. INA § 241(a)(2)(A)(i), 8 U.S.C. § 1251(a)(2)(A)(i) (emphasis added);[4] *see also* 18 U.S.C. § 371 (providing for a sentence of

---

[2]The INS's functions were transferred to the Department of Homeland Security (DHS) on March 1, 2003. *See* 6 U.S.C. § 542. For consistency, we use the former name when referring to acts taken before this date.

[3]18 U.S.C. § 371 (1995) provides in relevant part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, either shall be fined under this title or imprisoned not more than five years, or both.

[4]INA § 241(a)(2)(A)(i) (effective until April 23, 1996) provided:

> Any alien who [ ] is convicted of a crime involving moral turpi-

up to five years). Lastly, at the time of her indictment, INA § 212(c) allowed for a discretionary waiver of removal, unless an alien "ha[d] been convicted of one or more aggravated felonies and ha[d] served for such felony or felonies a term of imprisonment of at least 5 years." 8 U.S.C. § 1182(c) (1995). However, it is important to note that Peng was charged with a crime involving moral turpitude, not an aggravated felony. Further, a conviction could not have resulted in a term of imprisonment of over five years. Thus, although a conviction could have rendered her deportable, it would not have disqualified her from eligibility to apply for relief under § 212(c).

These potential consequences changed just prior to Peng's trial, because the law changed. Effective April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which amended the INA to make crimes of moral turpitude deportable offenses as to any alien "convicted of a crime for which a sentence of one year or longer *may* be imposed." 8 U.S.C. § 1251(a)(2)(A)(i) (effective April 24, 1996) (emphasis added), *codified at* INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i) (2008). Therefore, because Peng was charged under a statute allowing for at most a five-year sentence, she faced a trial on a charge that would automatically render her deportable if convicted. Additionally, by enacting AEDPA, "Congress further restricted the scope of § 212(c) relief by denying it to any alien who had been convicted of an aggravated felony or [two or more] crimes of moral turpitude." *Luna v. Holder*, 659 F.3d 753, 756 (9th Cir. 2011). Thus, although (just prior to trial) a conviction would have rendered Peng deportable, it would not

_____

tude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(i) of this title) after the date of entry, and [ ] either is sentenced to confinement or is confined therefor in a prison or correctional institution for one year or longer, is deportable.

have disqualified her from eligibility to apply for relief under § 212(c), because (1) Peng was not charged with an aggravated felony and (2) she stood charged with only a single crime involving moral turpitude.

Peng did not change her plea before trial. Her jury trial commenced on May 8, 1996. On May 9, the jury returned a guilty verdict. On December 2, 1996, Peng received a noncustodial sentence of two years of probation.

While Peng awaited sentencing, Congress enacted the IIRIRA on September 30, 1996. IIRIRA § 304(b) repealed INA § 212(c), replacing it with a narrower form of relief called cancellation of removal. *See* 8 U.S.C. § 1229b. In addition, IIRIRA § 304(b) added a seven-year continuous presence requirement to INA § 212(h), 8 U.S.C. § 1182(h), under which an LPR may apply for a waiver of inadmissibility.

The INS commenced removal proceedings against Peng on September 10, 1997. Peng conceded removability and applied for asylum and voluntary departure. The Immigration Judge (IJ) denied her applications, and the Board of Immigration Appeals (BIA) dismissed her appeal in 2002.

Peng then filed a motion to remand to apply for adjustment of status. The BIA denied the motion, because (1) Peng's conviction rendered her inadmissible and (2) Peng had not submitted an application for a waiver of inadmissibility under § 212(h). Peng appealed. In 2005, our court granted Peng's petition for review to allow her to submit the requisite application. *Peng v. Ashcroft*, 121 Fed. App'x 776, 2005 WL 352573 (9th Cir. Feb. 15, 2005). The BIA then remanded Peng's case to the immigration court.

On remand from the BIA, the IJ denied Peng's request for a waiver of inadmissibility under § 212(h), because Peng had not maintained a continuous presence in the United States for

seven years before the commencement of her removal proceedings. Because Peng was statutorily ineligible for the § 212(h) waiver, she remained inadmissible and could not qualify for an adjustment of status. *See* INA § 245(a). Additionally, the IJ denied Peng's request for a continuance to apply for a waiver of removal under former § 212(c), on the ground that Peng's immigration proceedings had been ongoing since 1997. The IJ also cited 8 C.F.R. § 1003.44(b) noting that, due to the repeal of § 212(c), the waiver was not available to aliens who had pleaded not guilty at their criminal proceedings. Peng appealed.

The BIA dismissed Peng's appeal in 2006. It concluded that Peng was ineligible for a § 212(c) waiver of removal, because the repeal of § 212(c) was impermissibly retroactive only as applied to aliens who had pleaded guilty to their criminal charge(s). Because Peng had pleaded not guilty and proceeded to a jury trial, the BIA concluded she was ineligible to apply for former § 212(c) relief. The BIA also noted that 8 C.F.R. § 1003.44(b) limited relief to aliens who entered a plea agreement. It further held that § 212(h) was not impermissibly retroactive as applied to Peng. Because Peng did not establish that she had lived in the United States for seven years prior to the commencement of her removal proceedings, the BIA held her ineligible to apply for a § 212(h) waiver of inadmissibility. Peng thus remained ineligible for an adjustment of status. She now petitions this court for review.

## STANDARD OF REVIEW

Where, as here, the BIA conducts its own independent review, "our review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Cordon-Garcia v. INS*, 204 F.3d 985, 990 (9th Cir. 2000).

## DISCUSSION

### I. The BIA abused its discretion when it denied Peng a continuance, because she was eligible to apply for a waiver of deportation under INA § 212(c)

Peng contests the BIA's decision affirming the denial of a continuance in order to apply for the § 212(c) waiver of removal. We review the denial of a continuance for an abuse of discretion. *Baires v. INS*, 856 F.2d 89, 91 (9th Cir. 1988). The BIA abuses its discretion "when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief." *Ahmed v. Holder*, 569 F.3d 1009, 1014 (9th Cir. 2009) (internal quotation marks omitted). An IJ may grant a motion for a continuance for "good cause shown." 8 C.F.R. § 1003.29; *Ahmed*, 569 F.3d at 1012. The regulations do not define "good cause," but the IJ —and, on appeal, the BIA—should consider factors including "(1) the nature of the evidence excluded as a result of the denial of the continuance, (2) the reasonableness of the immigrant's conduct, (3) the inconvenience to the court, and (4) the number of continuances previously granted." *Id.*

In reviewing the IJ's decision, the BIA did not review these relevant factors. Instead, the BIA affirmed the IJ's denial of the requested continuance, because Peng was not eligible for a § 212(c) waiver as she was convicted after a trial and not under a plea agreement.[5] When the BIA denies a continuance on legal grounds such as these, we will find an abuse of discretion if the BIA acted "arbitrarily, irrationally, or contrary to law." *Hernandez-Velasquez v. Holder*, 611 F.3d 1073,

---

[5]We note that the BIA also cited 8 C.F.R. § 1003.44 in affirming the denial of a continuance. Section 1003.44 provides for a special motion to seek § 212(c) relief for aliens who pleaded guilty or nolo contendere to certain crimes before April 1, 1997. It explicitly does not apply to former LPRs who were convicted after a trial, but it does not say that such aliens are ineligible to apply for § 212(c) relief through some other avenue. *Id.* § 1003.44(a).

1077 (9th Cir. 2010) (internal quotation marks and alterations omitted).

To determine whether the BIA acted arbitrarily, irrationally, or contrary to law, we must determine whether Peng's reliance upon the availability of § 212(c) relief (when she decided to proceed to a jury trial) is sufficient to distinguish Supreme Court and Ninth Circuit general precedent that § 212(c) relief is only available to aliens whose convictions were obtained through plea agreements. *See INS v. St. Cyr*, 533 U.S. 289, 326 (2001); *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1121 (9th Cir. 2002). We review de novo whether the enactment of IIRIRA (repealing § 212(c) relief) is impermissibly retroactive. *Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 932 (9th Cir. 2007).

Peng argues that, because § 212(c) relief was available to her at the time she proceeded to trial, the application of IIRIRA § 304(b)'s repeal of § 212(c) relief would result in an impermissible retroactive effect. We agree.

**A.   *Section 212(c) is available to aliens who pleaded guilty***

Though Congress has the power to make statutes apply retroactively, such statutes pose special concerns. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994). The Supreme Court has thus recognized that a "presumption against retroactive legislation" is "deeply rooted" in its jurisprudence. *Id.* at 265.

> Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.

*Id.* In determining whether legislation's effects are impermissibly retroactive, a two-step test is employed. *United States v.*

*Reynard*, 473 F.3d 1008, 1014 (9th Cir. 2007). Under the first step, "[a] statute may not be applied retroactively . . . absent a clear indication from Congress that it intended such a result." *St. Cyr*, 533 U.S. at 316. "If Congress's intent is sufficiently clear from the text and legislative history, then the statute may be applied retroactively, and the court need not address the second step." *Reynard*, 473 F.3d at 1014. "Step two must be employed where Congress's retroactive intent is not clear. We must then determine whether application of the act violates the Due Process Clause and consequently has a 'retroactive effect.' " *Id*.[6]

**[1]** In *St. Cyr*, the Supreme Court addressed the retroactivity of IIRIRA § 304(b) in the context of an alien who had pleaded guilty to an aggravated felony. Applying the retroactivity analysis laid out in *Landgraf*, the Court first asked whether Congress had clearly expressed an intention to make IIRIRA § 304(b) retroactive. *St. Cyr*, 533 U.S. at 315. The Court concluded that it had not. *Id.* at 320. Proceeding to step two, the Court inquired whether the new law would produce an impermissibly retroactive effect upon aliens who had pleaded guilty "at a time when their plea would not have rendered them ineligible for § 212(c) relief." *Id.*

> "The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about 'whether the new provision attaches new legal

---

[6]The government argues that, because relief is entirely discretionary under § 212(c) and § 212(h), Peng cannot establish a substantive due process violation. This argument lacks merit. While the Attorney General has discretion to grant the waiver of removal, the right to apply for the waiver is not subject to the Attorney General's discretion. *Cf. United States v. Leon-Paz*, 340 F.3d 1003, 1005 (9th Cir. 2003) (holding that alien's due process rights were violated because the IJ incorrectly informed him that he was ineligible for § 212(c) relief); 8 C.F.R. § 1240.49(a) ("The immigration judge shall inform the respondent of his or her apparent eligibility to apply for . . . [a waiver of deportation] and shall afford the respondent an opportunity to make application therefor during the hearing.").

consequences to events completed before its enact-
ment.' " *Martin* [*v. Hadix*, 527 U.S. 343, 357-58
(1999)] (quoting *Landgraf*, 511 U.S., at 270, 114 S.
Ct. 1483). A statute has retroactive effect when it
" 'takes away or impairs vested rights acquired under
existing laws, or creates a new obligation, imposes
a new duty, or attaches a new disability, in respect
to transactions or considerations already past . . . .' "
*Id.*, at 269, 114 S. Ct. 1522 (quoting *Society for
Propagation of the Gospel v. Wheeler*, 22 F. Cas.
756, 767, No. 13,156 (C.C.D.N.H. 1814) (Story, J.)).

*Id.* at 321 (footnote omitted). Examining the situation of
aliens who entered plea agreements with the government (pre-
sumably with the expectation that they would receive sen-
tences that would leave them eligible for § 212(c) relief, *see
id.* at 323), the Court concluded the repeal of § 212(c) "clearly
attache[d] a new disability" to the past decision to give up
certain rights by pleading guilty. *Id.* at 321-22 (internal quota-
tion marks omitted). As the Court stated, "[p]lea agreements
involve a *quid pro quo* between a criminal defendant and the
government," such that by giving up the right to a trial, a
defendant "grant[s] the government numerous tangible bene-
fits, such as promptly imposed punishment without the expen-
diture of prosecutorial resources." *Id.* at 322 (internal
quotation marks omitted). It would be unfair to an alien, hav-
ing given up his right to trial in reliance on remaining eligible
to apply for the § 212(c) waiver, to then deprive him of the
opportunity to apply for that relief. Thus, the Court concluded
that IIRIRA § 304(b) was impermissibly retroactive as
applied to aliens who had pleaded guilty to deportable
offenses before its effective date. *Id.* at 322-23.

**B.** ***Section 212(c) is not available to aliens who pro-
ceeded to trial if they cannot plausibly argue that they
relied on the availability of relief***

**[2]** One year after *St. Cyr*, our court decided *Armendariz-
Montoya v. Sonchik*, 291 F.3d 1116 (9th Cir. 2002), a case

that was factually similar to *St. Cyr* except that Armendariz-Montoya had pleaded not guilty and was convicted of an aggravated felony by a jury. Focusing on this factual difference, we determined that—unlike aliens who gave up their right to a trial in reliance on the possibility of remaining eligible for § 212(c) relief—aliens accused of aggravated felonies who pleaded not guilty could not demonstrate any past act done in reliance on the availability of § 212(c) relief. *Id.* at 1121. Aliens accused of aggravated felonies were on notice that, if convicted and sentenced to more than five years' imprisonment, they would be ineligible to apply for the § 212(c) waiver. *See* INA § 212(c), 8 U.S.C. § 1182(c) (1995) (repealed). By proceeding to trial and leaving their sentences in the hands of the sentencing court, these aliens could not plausibly argue that they relied on the availability of § 212(c) relief. Nor could such aliens argue that reliance on the availability of § 212(c) relief caused them to change any other past behavior. *See Armendariz-Montoya*, 291 F.3d at 1121 (reasoning that "[i]t would border on the absurd to argue that these aliens might have decided not to commit [aggravated felonies], or might have resisted conviction more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation" (quoting *LaGuerre v. Reno*, 164 F.3d 1035, 1041 (7th Cir. 1998)). Accordingly, we held that the elimination of § 212(c) did not result in an impermissible retroactive effect on Armendariz-Montoya. *Id.* at 1122.

In *Kelava v. Gonzales*, 434 F.3d 1120 (9th Cir. 2006), we reaffirmed our holding in *Armendariz-Montoya*. Kelava was charged by the INS as removable for (1) having been convicted of an aggravated felony and (2) engaging in terrorist activity. *Kelava*, 434 F.3d. at 1122. We found Kelava ineligible for § 212(c) relief despite Kelava's plea of guilty to the aggravated felony. *Id.* at 1126. We held that Kelava's terrorist activity (which rendered him removable) precluded reliance on relief, because he could not plausibly claim that he would

not have committed the terrorist activity if he had known about the elimination of § 212(c) relief. *Id.*

Thereafter, the BIA interpreted *Armendariz-Montoya* and *Kelava* to create a bright-line rule barring aliens who proceeded to trial from seeking § 212(c) relief. The DHS urges us to adopt this interpretation. Although not wholly unreasonable, *see Hernandez de Anderson*, 497 F.3d at 944 (Tallman, J., dissenting), we have rejected such a bright-line rule. *Id.* at 940 (panel opinion) ("*Landgraf* and *St. Cyr* make clear that entering into a quid pro quo exchange is not the sole form of reliance on prior law that can support a retroactivity claim."); *accord Ponnapula v. Ashcroft*, 373 F.3d 480, 493 (3d Cir. 2004). Indeed, the Supreme Court has explicitly warned against creating presumptions in favor of retroactivity. *See Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 950 (1997).

### C. *Section 212(c) is available to aliens who proceeded to trial if they can plausibly argue that they relied on the availability of relief*

**[3]** In the case before us, we are presented with an issue of first impression. Unlike the aliens in *St. Cyr*, *Armendariz-Montoya*, and *Kelava*, Peng was not charged with or convicted of an aggravated felony. Thus, those cases are distinguishable from our present case. Here, Peng was charged with and convicted of a crime involving moral turpitude. Thus, *St. Cyr* compels us to evaluate this case on its own merits, applying a "commonsense, functional judgment about whether [IIRIRA § 304(b)] attaches new legal consequences to events completed before its enactment." 533 U.S. at 321 (internal quotation marks omitted), *quoted in Hernandez de Anderson*, 497 F.3d at 937.

We are convinced that applying IIRIRA § 304(b) retroactively to Peng's case would result in an impermissible retroactive effect. To prevail on a retroactivity argument, an alien

must demonstrate reasonable reliance on pre-IIRIRA law. *Hernandez de Anderson*, 497 F.3d at 939. An alien demonstrates reasonable reliance "if it would have been objectively reasonable under the circumstances to rely on the law at the time." *Id.* at 941.

**[4]** At the time Peng was charged with her crime involving moral turpitude, a guilty plea with a guaranteed sentence of less than one year could have protected Peng against deportation. Notwithstanding, a conviction (by guilty plea or guilty verdict)—even if sentenced to the maximum sentence of five years—would not have disqualified her from eligibility to apply for § 212(c) relief, because only aliens who (1) were convicted of an aggravated felony and (2) served more than five years were disqualified from § 212(c) relief. By pleading not guilty, Peng had "two bulwarks" to protect herself against possible deportation. *See United States v. Leon-Paz*, 340 F.3d 1003, 1006 (9th Cir. 2003). She could either be acquitted, thereby remaining non-deportable, or, if convicted, she could count on being eligible to apply for § 212(c) relief. *Cf. id.*

On the other hand, before trial, if Peng pleaded guilty to the crime as charged, she would have automatically rendered herself removable. At that time, Peng could only avoid the possibility of deportation by being acquitted at trial. There would be no quid pro quo for Peng: the prosecution would get the benefit of a conviction without expending resources, *see St. Cyr*, 533 U.S. at 322, and the DHS would similarly get an easy proof of removability. Meanwhile, based upon the plain language of § 212(c) (under either the pre or post April 24, 1996 amendment), Peng's eligibility to apply for § 212(c) relief remained the same, even if she were convicted by jury and afforded the maximum five-year sentence. We cannot fault her for exercising her constitutional right to a trial under these circumstances. Doing so was in no way "inconsistent with preserving a contingent interest in § 212(c) relief." *Ponnapula*, 373 F.3d at 495.

**[5]** Aliens in Peng's situation, who were not charged with aggravated felonies and made the decision to proceed to trial, thus did so in reasonable reliance on the pre-IIRIRA state of the law. *See Hernandez de Anderson*, 497 F.3d at 941. At the time she pleaded not guilty, Peng had a settled expectation that she would remain eligible to apply for § 212(c) relief. *Cf. id.* at 942. To draw a line between aliens who pleaded guilty and those who pleaded not guilty to a first crime involving moral turpitude would thus be arbitrary and out of line with *Landgraf* and *St. Cyr*'s admonition to apply a "commonsense, functional judgment" to the facts of each individual case. Therefore, prior to the enactment of IIRIRA on September 30, 1996, an alien, who proceeded to trial on a crime involving moral turpitude (having not been convicted of one prior crime involving moral turpitude), remains eligible to apply for a § 212(c) waiver.

**[6]** Reviewing the factors necessary to determine whether good cause has been shown for a continuance, the BIA's denial of a continuance was an abuse of discretion. Peng should have been allowed to present evidence that she was eligible for § 212(c) relief. There is no evidence that Peng's conduct was unreasonable during the entirety of this underlying case. A continuance would not have inconvenienced the BIA. Lastly, as explained above, the BIA's denial of the continuance on legal grounds was contrary to law. We therefore grant the petition as to this issue and remand the case back to the BIA. On remand, Peng should be allowed a continuance to apply for a § 212(c) waiver of removal, though we make no comment on her ultimate eligibility for such relief.[7] Because we hold that Peng may apply for § 212(c) relief, we

---

[7]The DHS argues that we may deny Peng's petition by holding that she did not maintain a seven-year continuous presence in the U.S. before the commencement of her removal proceedings. *See* INA § 212(c), 8 U.S.C. § 1182(c) (repealed). However, neither the IJ nor the BIA ruled on this ground, and our review is confined to the decision of the BIA. *See Cordon-Garcia*, 204 F.3d at 990. We thus remand this issue to the BIA for decision in the first instance.

do not reach her equal protection claim based on the distinction between aliens who plead guilty and those who plead not guilty to identical crimes.

## II. The BIA did not err when it held that INA § 212(h)'s seven-year continuous presence requirement was not impermissibly retroactive

Peng next contests the denial of her application for a waiver of inadmissibility under INA § 212(h). Without the waiver of inadmissibility, Peng's conviction renders her inadmissible, INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), and thus ineligible to apply for an adjustment of status. *See* INA § 245(a), 8 U.S.C. § 1255(a). Peng argues that § 212(h)'s seven-year residency requirement was impermissibly applied retroactively to her case. She also raises an equal protection claim based on the distinction between LPRs—who are subject to the seven-year residency requirement—and non-LPRs—who are not.

### A. *Retroactivity of the seven-year residency requirement*

**[7]** Effective September 30, 1996, Congress amended INA § 212(h) to add a seven-year residency requirement:

> (a) IN GENERAL. — Section 212(h) (8 U.S.C. 1182(h)) is amended by adding at the end the following: "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.["]

(b) EFFECTIVE DATE. — The amendment made by subsection (a) shall be effective on the date of the enactment of this Act and shall apply in the case of any alien who is in exclusion or deportation proceedings as of such date unless a final administrative order in such proceedings has been entered as of such date.

IIRIRA § 348, Pub. L. No. 104-208, at 3009-639.

**[8]** proceedings did not commence until September 10, 1997, nearly one year after the amendment to § 212(h). Section 212(h)'s residency requirement is thus prospective as applied to Peng's case. Its effective date in relation to her criminal proceedings is irrelevant. Because Peng was admitted to the U.S. in May 1991, and her removal proceedings commenced in September 1997, Peng does not meet the seven-year residency requirement and is ineligible for § 212(h) relief. We therefore deny her petition for review as to her due process claim under § 212(h).

## B.   *Equal protection challenge*

**[9]** Finally, Peng argues that it is a denial of equal protection to require LPRs, who have been convicted of crimes involving moral turpitude, to acquire seven years of continuous presence in the United States but not to impose the same requirement on non-LPRs who have been convicted of these crimes. Aliens are entitled to the benefits of equal protection. *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). Nonetheless, Congress retains broad power to regulate the admission and removal of aliens. *See United States v. Viramontes-Alvarado*, 149 F.3d 912, 916 (9th Cir. 1998). Accordingly, our review of the immigration laws is limited, and we will uphold a statute if there is a "facially legitimate and bona fide reason for enacting a discriminatory rule." *Id.* (internal quotation marks omitted).

**[10]** We hold that there is a rational basis for applying the seven-year residency requirement to LPRs and not to non-LPRs, having considered a similar challenge in *Taniguchi v. Schultz*, 303 F.3d 950 (9th Cir. 2002). There, we held that a rational basis exists for denying a § 212(h) waiver to LPRs (who had been convicted of aggravated felonies) but not to non-LPRs (who had been convicted of aggravated felonies). *Id.* at 957-58. We noted that "LPRs enjoy substantial rights and privileges not shared by other aliens, and therefore it is arguably proper to hold them to a higher standard and level of responsibility than [non-LPRs]." *Id.* at 958 (alteration in original) (internal quotation marks omitted). In addition, LPRs that were convicted of aggravated felonies have demonstrated that the generally "stronger ties" they have to the United States "were insufficient to deter this criminal conduct." *Id.* "Therefore, Congress could have reasoned that aggravated felon LPRs pose a higher risk for recidivism than illegal aliens who did not have all of the benefits of legal permanent resident status to deter them from committing their crimes." *Id.* (internal quotation marks omitted). Congress may have deemed LPRs "less deserving of a second chance than non-LPRs." *Id.* (internal quotation marks omitted). Noting that it may have been wise to eliminate § 212(h) relief for non-LPR aggravated felons as well, we were nonetheless confined by our deferential standard of review to conclude that a rational basis existed for the LPR versus non-LPR distinction. *Id.*

**[11]** That *Taniguchi* involved an LPR convicted of an aggravated felony, rather than a crime involving moral turpitude, makes no difference. *Taniguchi*'s rationale—that Congress may have wished to hold LPRs to a higher standard and considered them less deserving of a second chance—should apply equally regardless of the category of crime the LPR commits. *Accord Camacho-Salinas v. U.S. Att'y Gen.*, 460 F.3d 1343, 1348-49 (11th Cir. 2006) (per curiam); *see also De Leon-Reynoso v. Ashcroft*, 293 F.3d 633, 640 (3d Cir. 2002). The rationale focuses on the status of the alien, not the cate-

gory of the crime committed. The framework for this equal protection challenge thus differs from our analysis concerning an alien's eligibility to apply for statutory relief under § 212(c), where Congress specifically precluded relief based upon offense category. We accordingly deny the petition for review as to Peng's equal protection claim, because a rational basis exists for the seven-year continuous presence requirement of § 212(h).

## CONCLUSION

The petition for review is granted, and this case is remanded to allow Peng a continuance to apply for the former § 212(c) waiver of removal. The petition is denied as to Peng's claims arising under INA § 212(h).

Each party shall bear their own costs.

**GRANTED and REMANDED in part; DENIED in part.**